**253 A.2d 239.**
STATE *vs.* PASCO J. LISI.

MAY 14, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Powers, J. This is an indictment charging a violation of G. L. 1956, §31-27-1.[1] The case was tried to a superior court justice and a jury which found the defendant guilty as charged. It is before us on the defendant's bill of exceptions, in the prosecution of which he presses two assignments of error. These are that the trial justice erred in denying his motion for a directed verdict or otherwise erred in denying his motion for a new trial.

The circumstances out of which the charge against defendant resulted are readily summarized. At or about 4:15 on the afternoon of September 29, 1963, a 71 year-old pedestrian named Anthony Quetta was struck and fatally injured[2] by an automobile being operated by defendant. It had been raining all day, sometimes heavily, and although apparently only drizzling at the time of the collision, the streets were wet.

The accident occurred on Douglas Avenue in the city

[1]This section provides in pertinent part:

"(a) When the death of any person ensues as a proximate result of an injury received by the operation of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of 'driving so as to endanger, resulting in death.'"

[2]At trial, a deputy medical examiner enumerated the victim's injuries as: "* * * fractured skull, fractured neck, fracture of the right hip, fracture of the right leg, a laceration over the right eye, orbital area over the right eye near the eyebrow, and a fracture of the left side of scalp, and associated, of course, with these multiple injuries there was hemorrhage and shock."

He further testified that these injuries were the proximate cause of death. The hospital report shows that Mr. Quetta was dead on arrival at 4:35 p. m.

of Providence, at or about where that highway intersects with Seamans Street. The defendant was driving southerly along said Douglas Avenue and the victim was crossing said avenue from east to west. He had been visiting with his son at a combination florist shop and greenhouse, operated by the son and located opposite the northwest corner of Douglas Avenue and Seamans Street.

On leaving his son's shop, Mr. Quetta was carrying a basket of vegetables which, after the accident, were found, some in the basket and some strewn along Douglas Avenue to the point where defendant's car had come to a stop, some 148 feet south of the southwest corner of the Douglas Avenue and Seamans Street intersection. The basket was found after the collision on the west sidewalk of Douglas Avenue, some seven feet from the south curb of Seamans Street, whereas Mr. Quetta was lying in the interesection with his head in Seamans Street and his feet pointing toward the easterly curb of Douglas Avenue.

Also subsequent to the collision, it was discovered that the right front headlight of defendant's car was broken and its glass scattered in a six-foot area on Douglas Avenue near the southwest corner of Seamans Street. Furthermore, there was some damage to the right front fender of defendant's car, and a piece of the victim's shirt was found caught on an ornament on the top of said right fender. Also, a motor vehicle inspector found that the driver's side of the seat was not attached to the floor and would tip back some eight inches.

There were no eye witnesses to the car striking the deceased, defendant claiming not to have seen him at any time, although he also claimed to have been looking straight ahead with no other traffic to block what was otherwise a clear view for some distance. A passenger riding with him made a similar claim. Both defendant and passenger, however, related that they heard a "thud" which caused de-

fendant to slow down and bring his car to a stop. The defendant claimed to have been traveling at 25 miles per hour, the maximum speed limit, when he heard the "thud." Further, both defendant and his passenger stated that just before the collision they had stopped on Douglas Avenue near a friend's house, two or three blocks from the scene of the collision.

Frank Quetta, with whom the victim had been visiting in the florist shop did not see his father struck, but heard what he described as two cars hitting together. Hurrying to the front door, he saw his father lying in the highway and defendant's car moving south "at a pretty fair rate of speed."

In thus summarizing the circumstances surrounding the alleged offenses we have resorted to the evidence as viewed by the trial justice when he passed on defendant's motion for a directed verdict. Our examination of the record substantiates his view.

It is a settled rule in this jurisdiction that a motion for a directed verdict denies the sufficiency of the evidence and challenges the state's right to go to the jury. *State* v. *Main,* 94 R. I. 338, 180 A.2d 814. This being so, it follows that in passing on a defendant's motion in a criminal case, the trial justice must give full credibility to the state's evidence, view it in the light most favorable to the state and draw therefrom every reasonable inference consistent with guilt. *State* v. *Edwards,* 89 R. I. 378, 153 A.2d 153; *State* v. *Poole,* 97 R. I. 215, 197 A.2d 163, and *State* v. *Main, supra.*

In the instant case, the trial justice in passing on defendant's motion followed the rule as thus stated, and relating the evidence as herein summarized to every element of the offense charged, held that the jury would be warranted in inferring therefrom that defendant was guilty beyond a reasonable doubt. So deciding, he denied defendant's motion and to this decision defendant duly excepted.

The defendant does not challenge the correctness of the rule. Rather, he argues, that the evidence, however adversely viewed as to him, neither establishes nor is susceptible of a reasonable inference that his operation of the car was "in reckless disregard of the safety of others" beyond a reasonable doubt. In support of this argument, he cites and relies on *State* v. *Scofield,* 87 R. I. 78, 138 A.2d 415, and cases from other jurisdictions, as well as numerous and accepted definitions of the words "willful" and "wanton."

This latter source of would-be comfort is derived from our holding in *State* v. *Scofield, supra,* where the offense charged was "reckless driving," and we held that the word "recklessly" as related to the operation of motor vehicles had acquired a clear and commonly understood meaning. This meaning we said at page 82, was " '* * * driving in such a manner as to indicate either a willful or wanton disregard for the safety of persons or property.' "

We are in full accord with what we said in *Scofield* but defendant manifestly misconstrues the import of what we said. In stressing as he does from Black's Law Dictionary such definition of *Willful* as "intending the result which actually comes to pass" and *Wanton* as "a willingness to injure and disregard of the consequences to others," it is clear that defendant conceives proof of an intentional injury resulting in death to be an element of the offense. This conception is erroneous.

The reckless, hence willful or wanton disregard of the safety of others, contemplated by §31-27-1, and which the state must prove beyond a reasonable doubt, is simply a question of fact to be resolved by the jury from probative evidence and the reasonable inferences to be drawn therefrom. The fact question thus presented is whether the driving complained of is a conscious and intentional driving that the driver knows or should know creates an un-

reasonable risk of harm to others, even though he has no actual intent to harm them. *State* v. *Anderson*, 247 Minn. 469, 78 N. W. 2d 320.

In the case at bar, defendant was operating an automobile with a defective seat, inferentially impairing his ability to be certain of control at the maximum rate of speed in a built-up area at a street intersection; and accelerating to such speed within a relatively short distance under weather conditions that to a prudent driver would suggest caution. Moreover, by his own admission, defendant failed to see Mr. Quetta who, from the incontrovertible physical evidence, must have walked directly across defendant's line of vision at a time when the automobile being operated by defendant could not have been more than a few car lengths from the point of impact. Notwithstanding this, the indisputable evidence also establishes that from the time he heard the "thud," defendant did not bring his car to a stop until it had traveled more than 148 feet. This is so because defendant would have heard the "thud" at the moment of collision and the glass from the broken headlight was scattered on Douglas Avenue several feet north of where the victim was lying.

In light of such evidence and inescapable inferences to be drawn therefrom, there was certainly a question for the jury and the trial justice did not err in denying defendant's motion for a directed verdict of acquittal.

The defendant also purports to press his exception to the trial justice's denial of his motion for a new trial. However, in his oral argument and brief he is content to merely incorporate the argument that he made in connection with his exception to the denial of his motion for a directed verdict. We take this to mean that he contends that the jury's verdict was contrary to law. We are so persuaded because at no time does he argue that the trial justice either failed to independently examine the evidence and pass on credi-

bility or, having performed this required duty, misconceived or overlooked material evidence on a controlling issue.

An examination of the trial justice's instructions to the jury and decision on the new trial motion discloses that defendant's position is not well taken. The trial justice charged the jury on the element of "reckless disregard of the safety of others" and in denying defendant's motion for a new trial applied the evidence as he viewed it in accordance with the law that he gave to the jury as he was bound to do. *Roland Bileau Transp. Co.* v. *Lodie Brien, Inc.*, 100 R. I. 723, 219 A.2d 401; *Conti* v. *Walter Winters, Inc.*, 86 R. I. 456, 136 A.2d 622. Having done this, he refused to disturb the jury's verdict. Accordingly his decision will not be disturbed by us. *McKay* v. *Zuckerman*, 104 R. I. 667, 248 A.2d 319.

We should perhaps observe that although defendant's brief first states categorically that there are but two issues —namely, the correctness of the trial justice's decisions on the motions for a directed verdict and a new trial — he refers later in his brief to an exception taken to the refusal of the trial justice to instruct as requested, being requested instructions numbered 6 and 14, and represented by exception numbered 21 in his bill of exceptions. He offered nothing by way of oral argument in support of this exception and the reference thereto in his brief is barren of anything by way of support other than the naked citation 52 N. E. 1337.5.

It is a long established rule with us that exceptions which are neither orally argued nor intelligibly briefed are deemed to have been waived. *Hanaford* v. *Stevens & Co.*, 39 R. I. 182, 98 A. 209; *Sunny Day Restaurant, Inc.* v. *Beacon Restaurant, Inc.*, 103 R. I. 707, 241 A.2d 295. It would therefore be in keeping with our well settled practice were we to consider the defendant's exception No. 21 to have been waived and our deviation from such practice in this case

should not be considered as a relaxing of the rule. However, out of a fullness of regard for the defendant's appellate rights, we have examined the requested but denied instructions and find that requested instruction No. 6 was adequately covered by the trial justice in his instructions to the jury, while requested instruction No. 14 was properly not given.

All of the defendant's exceptions are overruled and the case is remitted to the superior court for further proceedings.

*Herbert F. DeSimone,* Attorney General, *Luc R. LaBrosse,* Special Assistant Attorney General, *Donald P. Ryan,* Assistant Attorney General, of counsel, for plaintiff.

*Anthony T. Jackvony,* for defendant.