**311 A.2d 281.**

STATE *vs.* HENRY ROSE.

NOVEMBER 13, 1973.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

ROBERTS, C. J. These are two indictments, one (No. 70-573) charging the defendant, Henry Rose, with leaving the scene of an accident, death resulting, in violation of

G. L. 1956 (1968 Reenactment) §31-26-1[1] and the other (No. 70-572) charging the defendant with manslaughter. The defendant was tried on both indictments to a jury in the Superior Court, and a verdict of guilty was returned in each case. Thereafter the defendant's motions for a new trial were denied, and he is now prosecuting a bill of exceptions in each case in this court.

These indictments followed the death of David J. McEnery, who was struck by defendant's motor vehicle at the intersection of Broad and Summer Streets in Providence at about 6:30 p.m. on April 1, 1970. According to the testimony of a bus driver, he had been operating his vehicle north on Broad Street and had stopped at a traffic light at the intersection of Summer Street. While the bus was standing there, he observed a pedestrian starting to cross Broad Street, and as the pedestrian reached the middle of the southbound lane he was struck by a "dirty, white station wagon" that was proceeding southerly on Broad Street. The pedestrian's body was thrown up on the hood of the car. The bus driver further testified that the station wagon stopped momentarily, the body of the pedestrian rolled off the hood, and the car immediately drove off along Broad Street in a southerly direction. The bus operator testified that he had alighted from his bus, intending to attempt to assist the victim, but was unable to locate the body.

Subsequently, it appears from the testimony of a police

---

[1]General Laws 1956 (1968 Reenactment) §31-26-1 reads, in part, as follows: "Duty to stop in accidents resulting in personal injury.—(a) The driver of any vehicle knowingly involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of §31-26-3. Every such stop shall be made without obstructing traffic more than is necessary. * * *"

officer, about 6:40 p.m. the police located a white station wagon on Haskins Street, a distance of some 610 feet from the scene of the accident. The police further testified that a body later identified as that of David J. McEnery was wedged beneath the vehicle when it was found and that the vehicle had been registered to defendant.

Testifying on behalf of the state was a Robert Buckley, who stated that he had worked with defendant and that about 5 p.m. on the day of the accident he had gone to a place located in Central Falls that he identified as The Palms where he met defendant about 5:15 p.m. Buckley further testified that about 7 p.m. that evening defendant phoned him, told him that he had been involved in an accident, and asked Buckley to help him look for his car. According to Buckley, he picked up defendant's girl friend, identified as Pat, and went to the vicinity of the accident and drove around for some time but was unable to locate the car.

Buckley testified that later he picked up defendant, who asked him to take him to a cafe in Central Falls known as The Well, where he would attempt to establish an alibi. After arriving at The Well, defendant asked Buckley to take him to the Central Falls police station, where defendant reported that his car had been stolen from in front of The Well sometime between 5:30 p.m. and 9 p.m. on that day. Buckley later drove defendant to Pat's home, and while there defendant answered a telephone call. After the telephone call had been completed, defendant told Buckley that "a guy had been killed." According to Buckley, defendant "was denying it on the 'phone" during the conversation.

We turn, first, to defendant's contention that the trial court erred in denying his motion for a directed verdict of acquittal in each case. It is settled that such a motion challenges the sufficiency of the evidence adduced by the

state to support a verdict of guilty beyond a reasonable doubt. Where the evidence so adduced is insufficient to meet such burden of proof, it is error to submit the case to a jury. *State* v. *Lisi,* 105 R.I. 516, 253 A.2d 239 (1969). In a criminal case the trial justice, in passing on such a motion, is required to give full credibility to the state's evidence, view it in a light most favorable to the state, and draw therefrom every reasonable inference consistent with guilt. However, where the evidence adduced by the state and the reasonable inferences to be drawn therefrom, even when viewed in a light most favorable to the state, are insufficient to establish guilt beyond a reasonable doubt, the court must grant the defendant's motion for a directed verdict. *State* v. *Saulnier,* 109 R.I. 11, 280 A.2d 85 (1971).

The defendant, contending that the evidence adduced in these cases is entirely circumstantial, urges that to warrant a jury in finding the accused guilty beyond a reasonable doubt, it is necessary not only that the evidence be consistent with a conclusion of guilt but must also at the same time be inconsistent with any reasonable hypothesis of innocence. This, the circumstantial evidence rule, so called, is followed in this state. *State* v. *Franklin,* 103 R.I. 715, 241 A.2d 219 (1968); *State* v. *Montella,* 88 R.I. 469, 149 A.2d 919 (1959).

While we do not agree as to the character of the evidence, we are unable to perceive that the test of the sufficiency of a combination of direct and circumstantial evidence to determine its adequacy to warrant a conclusion of guilt beyond a reasonable doubt would differ materially from that set out in the circumstantial evidence rule. That rule obviously derives from the fundamental rule applied in all criminal cases to test the sufficiency of evidence to support a finding of guilt beyond a reasonable doubt. It is resorted to, in our opinion, to overcome

a misconception of the probative thrust of circumstantial evidence, particularly with reference to cases where the findings must rest either entirely or in major part on circumstantial evidence.

It is well settled that there is no valid distinction between the probative force of direct and of circumstantial evidence. Any fact may be established by circumstantial evidence as sufficiently and completely as by positive, direct evidence. *State* v. *Davis,* 108 N.H. 45, 226 A.2d 873 (1967); *State* v. *Dancyger,* 29 N.J. 76, 148 A.2d 155 (1959); *State* v. *Goodhart,* 112 Vt. 154, 22 A.2d 151 (1941); 3 Wharton, *Criminal Evidence* (12th ed. 1955) §980 at 472-73.

Testing the sufficiency of mixed evidence to support a finding of guilt beyond a reasonable doubt requires the making of no distinction between direct evidence of a fact and evidence of circumstances from which the existence of a fact may be inferred. No greater degree of certainty is required when the evidence is circumstantial than when it is direct. In either case the trier of fact must be convinced beyond a reasonable doubt of the guilt of the accused. *Nichols* v. *State,* 5 Md. App. 340, 247 A.2d 722 (1968). " 'A conclusion of guilt requires proof beyond a reasonable doubt, and proof to that extent is proof which precludes every reasonable hypothesis except that which it tends to support, and is consistent with the defendant's guilt and inconsistent with any other rational conclusion.' " *State* v. *Reid,* 154 Conn. 37, 40, 221 A.2d 258, 259 (1966), quoting *State* v. *Foord,* 142 Conn. 285, 295, 113 A.2d 591, 596 (1955).

We are persuaded, then, that to test the sufficiency of evidence to support a finding of proof of guilt beyond a reasonable doubt requires that such evidence be consistent only with a reasonable theory of guilt. Where that evidence is consistent with any other reasonable conclusion,

the guilt of the accused cannot be considered as having been established beyond a reasonable doubt.

The defendant here argues that in neither case did the evidence exclude any reasonable hypothesis or theory of the innocence of defendant. In so arguing in case No. 70-572, charging defendant with manslaughter, defendant directs our attention to the fact that the court charged the jury that there was no evidence in the case of culpable negligence on the part of defendant up to and including the time at which Mr. McEnery was struck by the station wagon. He further charged the jury that, in order to find defendant guilty of manslaughter, it would be necessary to find that McEnery was alive immediately after the impact and that the conduct of defendant following the impact constituted culpable negligence.

The defendant is contending that if the evidence is susceptible of a finding that McEnery was killed upon impact, he was not alive at the time he was being dragged under defendant's vehicle and defendant could not be found guilty of manslaughter. An examination of the testimony of the only medical witness makes it clear that, in his opinion, death could have resulted immediately upon impact by reason of a massive fracture of the skull. The medical witness also testified that death could have resulted a few minutes after the impact but conceded that he was not sure when it did occur.

We are inclined to agree with defendant's contention in this respect. Obviously, the evidence is such that death could have occurred after defendant had driven away with McEnery's body lodged under his car and, therefore, be consistent with guilt. On the other hand, the medical testimony is equally consistent with a finding that McEnery could have died instantly upon impact and, therefore, be consistent with a reasonable conclusion other than the guilt of defendant. It is clear, then, that, the testimony

of the medical examiner lacking any reasonable medical certainty as to the time of the death of McEnery, we are unable to conclude that on such evidence defendant was guilty of manslaughter beyond a reasonable doubt. Therefore, we conclude, with respect to Indictment No. 70-572, that it was error to deny defendant's motion for a directed verdict of acquittal. *See State* v. *Dancyger, supra.*

We are unable, however, to reach the same conclusion concerning the denial of the motion for a directed verdict of acquittal with respect to Indictment No. 70-573, in which defendant was charged with leaving the scene of an accident. The testimony adduced through the bus driver clearly establishes that at the time McEnery was struck his body was thrown up on the hood of the car and that while the car was standing still the body rolled off the hood and thereupon defendant drove off in a southerly direction. Later, the police found defendant's station wagon on a side street some 610 feet from the point of impact with McEnery's body wedged under the front of the car. The circumstances here are clearly consistent with a hypothesis of guilt, but it is clear that they are not consistent with any other reasonable hypothesis. We conclude, therefore, with respect to Indictment No. 70-573, that the trial court did not err in denying the motion for a directed verdict.

Because we conclude that the trial court erred in denying defendant's motion for a directed verdict of acquittal in the case charging him with manslaughter, it is unnecessary for us to consider his contentions of error concerning his motion for a new trial in that case.

Therefore, we turn to consider his contention that it was error to deny his motion for a new trial in the case charging him with knowingly leaving the scene of an accident. One seeking to set aside a decision of a trial justice on a motion for a new trial has the burden of showing that

the trial justice was either clearly wrong or that, in reviewing the evidence and the credibility and weight thereof, he misconceived or overlooked some relevant or material evidence on a controlling issue. *State* v. *Correia,* 106 R.I. 655, 262 A.2d 619 (1970); *State* v. *Contreras,* 105 R.I. 523, 253 A.2d 612 (1969).

In this case we have closely scrutinized the trial justice's decision on the motion and are persuaded that he exhaustively examined the evidence and, in an exercise of his own independent judgment, passed upon the credibility of the witnesses and the weight to be given to their testimony. He makes it clear in his decision that he found the bus operator, who witnessed the impact, to be entirely credible and that the witness Buckley, who testified as to assisting the defendant to look for his car after the accident, was equally credible. He concluded that their testimony was sufficient to establish beyond a reasonable doubt that the defendant had knowledge that he had struck McEnery and that McEnery had sustained injuries and that the defendant had, with such knowledge, left the scene. In such circumstances we conclude that it was not error to deny the defendant's motion for a new trial in this case.

The exception of the defendant to the denial of his motion for a directed verdict in the manslaughter case, Indictment No. 70-572, is sustained, and the judgment of conviction is reversed; all of the defendant's exceptions to rulings in the case charging him with leaving the scene of an accident, Indictment No. 70-573, are overruled; and both cases are remitted to the Superior Court for further proceedings.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *R. Raymond Greco,* Special Asst. Attorney General, for plaintiff.

*Bevilacqua & Cicilline, Anthony S. DelGiudice,* for defendant.