THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM DRUMHELLER, Defendant-Appellant.

(No. 72-311;

Second District—November 27, 1973.

Ralph Ruebner, Deputy Defender, of Elgin (Richard J. Wilson, Assistant Appellate Defender, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield, and Gerry L. Dondanville, State's Attorney, of Geneva (James B. Zagel and Ronald Hanna, Assistant Attorneys General, of counsel), for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

A jury found the defendant guilty of murder and he was sentenced to a term of 70 to 125 years.

On appeal, the defendant contends that he was not proven guilty of murder beyond a reasonable doubt, trial counsel was incompetent, the jury was improperly instructed and the sentence imposed was excessive.

Mary Breitweiser and her fourteen-month-old son, David, moved into defendant's home on September 8, 1970. Because their work schedules differed, arrangements were made for a sitter to care for the child at her home until the early evening hours. Defendant would then call for David and care for him until his mother returned from work at approximately 1:30 A.M. Defendant began, almost immediately, to discipline David for not responding to his wishes and on the evening of September 9th, spanked the child, leaving black and blue marks on his buttocks. On September 16th, defendant again spanked the infant bruising both his legs and causing him to lose his balance; in the fall, David hit his head on a table occasioning a scrape and bump on his head. A similar incident occurred on September 23rd. The following, taken from a written statement by defendant, relates the happenings of September 25th.

> "On Friday evening, Sept. 25th, 1970, I was teaching David to practice turning around as he walked. He was slowly walking away from me and I called him to come to me. I called several times and he didn't make any attempt to turn. So I went up behind him and shouted his name and I reached around in front of him and swung my hand (in a closed fist) and caught him in the stomach which jerked him off the floor up to me. I was afraid that I had hurt him so I held him and said to him I'm sorry, I didn't mean to hurt you, and I took him into his room, checked his diapers which were ok. It was when I was picking him up and down that he had the convulsion."

Moments later, "the child's hands curled in and his legs drew up underneath him"; defendant drove the child to the hospital and testified that upon entering the hospital, the automatic door opened, striking David's head. On September 29th, David died.

Medical evidence established the cause of death as acute diffused peritonitis, the result of an explosive rupture of the stomach from an external trauma (blunt blow). There was further evidence that the child suffered from subpleural hemorrhage in the left lung (both lobes), hematomas on the thighs, buttocks and head, and cerebral edema. Photographs depicting the nature, extent and location of the bruises were admitted into evidence.

The mother and sitter testified that they had observed David's bruises

after each of the incidents. Four others testified to having seen bruises on the child after some of the occasions.

The defendant testified to having previously lied in explaining how David had incurred his injuries and admitted that he was the one responsible for striking the child. He justified his acts by claiming that he only intended to discipline the youngster, not hurt him.

Defendant claims that he was not proved guilty of murder beyond a reasonable doubt and requests this Court to reduce the degree of the offense to involuntary manslaughter. To substantiate this claim it is argued, (1) that the evidence failed.to establish the necessary mental state, *i.e.*, intent to kill or knowledge that his act would create strong probability of death or great bodily harm, (2) that the circumstances show, at most, that his act was accidental or reckless, and (3) that death resulting from a blow of a bare fist cannot be considered murder.

■■■ There was sufficient evidence from the defendant's own testimony to establish the murder conviction. It is not necessary to directly prove that he had an intent to kill, only that he voluntarily and wilfully committed an act, the natural tendency of which was to destroy another's life. In such instances the intent can be implied or inferred from the character of the act. (*People v. Latimer*, 35 Ill.2d 178, 182-183 (1966).) Further, the fact that defendant, on three previous occasions, inflicted injuries upon the child, refutes the suggestion that his actions were accidental or reckless. His act formed sufficient basis for the jury to conclude beyond a reasonable doubt that the defendant knew or should have known that his conduct on September 25th would create a strong probability of death or great bodily harm. We hold that this evidence sustains the jury's conclusion as to the required mental state. Granted, under given circumstances, a fatal blow from a bare fist may not be considered murder, but where disparity in size and strength are so great, such disparity can warrant a conviction for murder. (*People v. Crenshaw*, 298 Ill. 412, 417 (1921).) We find the exception noted in the *Crenshaw* decision applicable to the instant case.

It is contended that the level of representation rendered by trial counsel reduced defendant's trial to a farce or sham. It is asserted that, except during conference on instructions, counsel failed to object during the course of the trial, particularly on those occasions concerning cumulative, immaterial evidence and the admittance of certain photographs, that he failed to move for suppression of defendant's statements and that he admitted defendant's guilt in closing arguments.

■■ Defendant contends that the testimony of each of four witnesses only served to corroborate the sitter's testimony. In actuality, however, these witnesses did not corroborate the entire testimony; each attested

to different segments of that testimony concerning injuries received by David on various dates. The charge that this testimony was of no probative value and amounted to cumulative, immaterial evidence to the prejudice of the defendant is without foundation. (*People v. Yonder,* 44 Ill.2d 376, 391 (1969).) This same conclusion applies to the introduction of six photographs of David taken at the hospital. In addition to disclosing the location of the injuries suffered, the photos portrayed two blood stained bandages on the child's head. The jury was informed that the bandages covered locations where surgical intervention became necessary to relieve pressure on the child's brain. Defendant argues that the pictures had no probative value but were introduced only as a ploy by the State to engender prejudice on the part of the jury. We believe the photographs had probative value not only to counter defendant's claim that his act was merely reckless or accidental but to show the jury the degree of force employed and the nature, location and extent of the bruises. The photographs were admissible despite oral testimony describing the injuries. *People v. Henenberg,* 55 Ill.2d 5, 13-14 (1973).

■■ During the first and second of four interrogations, defendant was not advised of his constitutional rights. It is urged that such failure vitiated his later statements and trial counsel should have, therefore, moved for suppression. The first questioning took place at the police station on the morning following David's death. Defendant voluntarily appeared upon request, was not arrested and left after a general inquiry into the incident. The second interrogation, later the same day (prompted by a pathologist's report stating that David had died as a result of a blow to the stomach), took place in the home of the defendant's grandmother while the defendant was neither in custody nor under arrest. Relying upon the doctrines set forth in *Escobedo v. Illinois,* 378 U.S. 478, 12 L.Ed.2d 977, 986, 84 S.Ct. 1758 (1964) and *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed.2d 694, 706, 86 S.Ct. 1602 (1966), defendant argues that he should have been advised of his rights, particularly during the second interrogation because the pathologist's report tended to focus the investigation upon him. Under the doctrines he espouses, the defendant overlooks the fact that he was not in custody or otherwise deprived of his freedom in any significant way on either occasion (*Miranda, supra,* 16 L.Ed.2d 694 at 706.) He was consequently not entitled to any warning concerning his constitutional rights.

It is further urged that trial counsel admitted defendant's guilt in closing argument. As stated previously, the defendant by his testimony admitted the act. We have read the closing remarks of trial counsel and conclude that his argument was an attempt to persuade the jury (as best he could in light of the evidence and the facts in issue) to render

a verdict of involuntary manslaughter rather than murder. In short, trial counsel attempted to reach in argument the same conclusion which present counsel now seeks on appeal. A review of the entire record disclosed that trial counsel competently represented defendant throughout his trial in accordance with the test set forth in *People v. Georger*, 52 Ill.2d 403, 409 (1972).

■■ Error is alleged in that the court refused certain instructions on insanity at the time of the act (I.P.I.-Criminal, Nos. 24.01 and 25.01). Defendant, father of two young children, testified that he had been strict in raising and disciplining his children. It is urged that this fact, coupled with the depraved nature of the instant crime, established enough evidence of insanity to require these instructions to go to the jury. We find this evidence insufficient to raise a reasonable doubt as to whether the defendant, at the time of the occurrence, lacked substantial capacity to either appreciate the criminality of his conduct or conform his conduct to the requirements of the law. (*People v. Smothers*, 55 Ill.2d 172, 175 (1973).) It is further argued that the refusal of these instructions resulted from the court's considering the evidence on the basis of defendant's competency to stand trial rather than his sanity at the time of the act. The basis for the court's decision does not alter the fact that there was insufficient evidence to warrant the giving of the instructions.

■■ Over objection, the jury was instructed that there was before them evidence that the defendant confessed to committing the crime (I.P.I.-Criminal, No. 3.07). It is argued that it was error to allow this instruction since the statements made by defendant were only admissions, not a confession. A confession is an acknowledgment of guilt as to all of the elements of the crime charged; an admission is but a statement having evidentiary value in proof of an element of the offense charged. (*People v. Georgev*, 38 Ill.2d 165, 175 (1967).) Defendant, in his written statement and from the stand, admitted that he delivered the fatal blow. He also testified that when he struck the child he intended the act, was consciously aware that he was striking the child and that he knew he had hurt the child. These written and oral statements were sufficient to establish a confession of the crime charged. We find no error in the giving of this instruction.

■■ Also over objection, the court gave an instruction defining reasonable doubt. The instruction did not contain the phrase "to justify acquittal" found in the case of *People v. Cagle*, 41 Ill.2d 528, 536 (1969) and, therefore, does not per se dictate reversal as claimed by defendant. (*People v. Perry*, 52 Ill.2d 156 (1972).) This instruction should not, however, be given and its use should be discontinued. (*People v. Whittaker*, 45 Ill.2d 491, 496 (1970).) If the facts in this case were close as

to the guilt of the defendant, we would, on this basis, reverse and remand the cause, but such is not the case. We hold that under the circumstances, the instruction did not create reversible error. *People v. Haskins,* 337 Ill. 131, 139-140 (1929).

Claiming that his sentence was excessive, defendant requests this court to reduce it under Rule 615(b)(4). Our attention is drawn to the almost identical circumstances in *People v. Crews,* 42 Ill.2d 60 (1969). There, the court was asked to invoke the power here requested after the same trial court on two occasions sentenced the defendant to death. (On the first occasion, the Supreme Court remanded the case for reconsideration of sentence. *People v. Crews,* 38 Ill.2d 331 (1967).) The court recognized that society is outraged by the murder of a child but cautioned that care must be taken to insure that the punishment is appropriate and just. Justice, the court stated, must include consideration for the background and circumstances which affect punishment, and reduced the sentence of death to a term of 20 to 35 years in the penitentiary.

■■ In this case, defendant's background reveals that he served honorably in the armed forces, was continuously employed and, except for this crime, had no prior criminal record. Under these circumstances and in view of the disparity of sentence between this case and the sentence imposed in the *Crews* case, we conclude that the penalty here is excessive.

It is the judgment of this court that the conviction must be affirmed but the sentence reduced to a minimum period of 20 years and a maximum period of 60 years in the penitentiary.

Judgment affirmed; sentence reduced.

GUILD, P. J., and SEIDENFELD, J., concur.