404 A.2d 490.

## STATE *vs.* JOHN H. ARNOLD.

July 31, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J.    The defendant, John H. Arnold (Arnold), was convicted at a Superior Court jury-waived trial of operating a motor vehicle on a public highway in reckless disregard of the safety of others, with death resulting, in

violation of G.L. 1956 (1968 Reenactment) §31-27-1. The sole issue in this appeal is whether the evidence adduced at trial warrants the finding of reckless conduct, which finding is the crucial element of the crime charged.

Shortly before noon of December 26, 1975, a tractor-trailer rig operated by Arnold and proceeding in a northerly direction along United States Interstate Route 95 struck an automobile. The collision, which occurred in the town of West Greenwich, somewhere south of the Coventry interchange, caused the death of a 14-year-old girl.

Route 95 is a divided freeway. The portion used by the northbound motorist consists of a breakdown lane, a low-speed lane, and a high-speed lane. Guard rails run along the outer edges of the breakdown and high-speed lanes. Weather conditions on the day in question were far from ideal. The sky was overcast, and the rain had been falling all day, sometimes heavily. Although the rain had slowed down to a drizzle at the time of the collision, the roadway was wet. Since the trial justice accepted Arnold's testimony as being truthful, we shall detail its pertinent parts, especially as it relates to Arnold's manner of operation up to and including the time of the collision.

Arnold described himself as a professional truck driver who traveled in interstate commerce an annual average of between 100,000 and 150,000 miles. On December 26 he was driving a tractor that weighed approximately 16,000 pounds. The trailer which the tractor was pulling was a "forty-foot insulated * * * box" whose estimated weight amounted to another 16,000 pounds. Arnold's trip originated in New Jersey. Once he was seated in the trailer's cab, Arnold was 10 feet above the ground level. His average speed as he neared the interchange was approximately 50 miles per hour.

At a point within three-quarters of a mile of the Coventry interchange, Arnold was on the crest of a hill. As he came down the hill, he came upon a depression in the roadway in which a large puddle of water covering both of the northbound lanes, as well as the breakdown lane, had

gathered. Numerous motorists, while proceeding through the puddle, had dampened their ignition wires to the extent that their vehicles had stalled and were halted on the side of the road. One such vehicle belonged to Kenneth Nathanson. Nathanson's vehicle was a 1975 Dodge Dart. As Arnold headed toward the depression, he saw the "big puddle" and a "heavy cloud of fog right on top of the water." Arnold could see the Coventry interchange on the rise of a hill up ahead, but he could not see what awaited him on the roadway on the other side of the fog.

As Arnold approached the puddle and the fog bank from the low-speed lane, he decelerated to approximately 35 miles per hour. At this juncture, an automobile in front of the rig turned into the high-speed lane. When the automobile hit the puddle, it threw up water and steam from its exhaust, both of which obscured Arnold's vision as he entered the puddle. When Arnold emerged from the fog bank, the high-speed-lane vehicle was near his left front bumper, and less than a truck length away and directly in front of the rig was Nathanson's Dodge Dart with its emergency or flashing lights off.[1]

When Arnold saw the motionless vehicle, he attempted to avoid it by turning left. His effort was unsuccessful; the tractor's right front bumper struck the Dodge Dart's left rear quarter. The 14-year-old was seated on the back seat directly behind the driver. The Nathanson vehicle traveled about 130 feet after the impact and came to a halt with its front up against the breakdown lane's guard rail.

---

[1] Conflicting evidence was offered regarding the exact location of the Dart and whether its headlights or breakdown lights were on. Mr. and Mrs. Nathanson insisted that the Dart was stopped completely within the confines of the breakdown lane and the emergency lights were operating. The motorist who had swerved over to the high-speed lane and made it through the puddle said that there were no lights on the Nathanson vehicle. His passenger told the trial justice that three-quarters of the Dart was projected into the low-speed lane. Arnold said he saw no lights and insisted that the Dart had stopped in the low-speed lane. The trial justice made no choice of whom he believed, since he considered these factors irrelevant to his ultimate finding.

Just before he began his analysis of the evidence, the trial justice alluded to the weather conditions that prevailed on December 26 and said that he had as his duty to determine, in light of the weather conditions existing on the day in question, whether Arnold "was aware or should have been aware that those conditions were such as to lead a reasonable man to realize that his manner of driving created an unreasonable risk of bodily harm to others or made it highly probable that the harm that could result would be substantial." In referring to such a phrase as "unreasonable risk of * * * harm," the trial justice obviously had in mind *State* v. *Lisi,* 105 R.I. 516, 520-21, 253 A.2d 239, 242 (1969), where this court described the recklessness envisioned by the statute as "a conscious and intentional driving that the driver knows or should know creates an unreasonable risk of harm to others, even though he has no actual intent to harm them."

However, subsequent to *Lisi* we emphasized in *State* v. *Lunt,* 106 R.I. 379, 382-83, 260 A.2d 149, 151 (1969), that the statute's use of the word "reckless" connotes something more than the negligence which would support a tort award, and what is intended by the statute is the preclusion of intentional conduct rather than intentional harm. The crucial element in reckless driving offenses, we said, is evidence which shows that the "driver has embarked upon a course of conduct which demonstrates a heedless indifference to the consequences of his action." Here, at no time did the trial justice ever speak in terms of "heedless indifference." When describing Arnold's technique, he did say that Arnold "was going too fast under all of the circumstances" and that "he should have started to take the proper action long before he did * * *."

The fact pattern produced before the trial justice is somewhat similar to that found in *Maloney* v. *Commissioner of Motor Vehicles,* 31 Conn. Supp. 325, 330 A.2d 101 (1974). Maloney was the driver of a ten-wheel dump truck that hit an automobile which had stopped for a stoplight at the base of an exit ramp, from which collision fatalities resulted. The

ten-wheeler's brakes had frozen and as a result had failed to take hold. Maloney should have known that his truck was overweight (the weight totaled 62,160 pounds). He should have realized, as an experienced driver, that the near-zero weather carried with it a risk that ice would form on the brake equipment when he drove through a puddle having a depth of 18 inches; and, in consideration of the overloaded truck and the approaching red light, he should have descended the ramp at a slower speed than 35 miles per hour. The Connecticut court held that Maloney's conduct warranted a finding of negligence, but not recklessness.

Here, while the evidence presented at trial supports a claim of negligence, it falls far short of establishing recklessness. There is simply no showing of a heedless indifference to life and limb such as intoxication, excessive speed, or defective equipment. We believe that in order to have a conviction under our reckless-driving statute, evidence of a course of conduct showing heedless indifference to its consequences must be present. Mere error in judgment by a driver is not sufficient. *State* v. *Lunt*, 106 R.I. 379, 383, 260 A.2d 149, 151-52 (1969). A responsible operator of a motor vehicle should be aware that its operation offers a potential source of harm to many, including one's fellow motorist or the pedestrian who is trying to cross the highway. One who incorrectly judges the manner in which to reduce this potential to the least probable level is negligent; one who ignores the responsibility altogether can be called reckless.

Arnold had been driving within the speed limit and, except for the freakish fog bank that hung over the puddle, visibility was good. No evidence was produced to show that he was exceeding the posted speed limit. To suggest that he should have decelerated to less than 35 miles per hour is to indicate a simple error in judgment but not, on this record, a manifestation of a heedless disregard for the safety of others. The errors in judgment Arnold made support an inference of negligence but provide no basis for a finding of a reckless homicide.

The defendant's appeal is sustained, the judgment of conviction is vacated, and the case is remanded to the Superior Court with direction to enter a judgment of acquittal.

*Dennis J. Roberts II*, Attorney General, *John M. Mc Loughlin*, Special Assistant Attorney General, for plaintiff.

*Hodosh, Spinella & Angelone, Gerard McG. DeCelles*, Providence, for defendant.