STATE

v.

Michael J. McGRANAHAN.

No. 79–273–C.A.

Supreme Court of Rhode Island.

June 20, 1980.

Dennis J. Roberts, II, Atty. Gen., Alan R. Tate, Sp. Asst. Atty. Gen., for plaintiff.

Nolan & Dailey, Leo J. Dailey, Coventry, for defendant.

## OPINION

DORIS, Justice.

This is an appeal from a Superior Court judgment of conviction in which a jury found Michael J. McGranahan (defendant) guilty of the second-degree murder of a four-and-one-half-week-old infant. The de-

fendant claims that the trial justice erred in denying his motions for a judgment of acquittal and for a new trial because the evidence did not support a finding of premeditation and malice. The defendant further claims that the sentence imposed, thirty-five years, was excessive.[1] We reject these arguments and affirm the judgment of the Superior Court.

On May 14, 1978, the rescue division of the Warwick Fire Department received an emergency call to attend to an infant having difficulty breathing. Upon arriving at the residence, rescue officer Robert Pollitt observed defendant giving an infant, Tina M. Suttles, mouth-to-mouth resuscitation. Officer Pollitt continued this procedure and administered chest massage but was unable to detect any vital life signs. When attempts to revive Tina proved unsuccessful she was transported to the emergency room of Kent County Memorial Hospital where she was pronounced dead.

While at the residence, defendant told Officer Pollitt that he had placed Tina in a bassinet and later discovered that she had stopped breathing. The defendant told the attending physician and nurse at the hospital that Tina had been fussy that afternoon and that he had placed her in the bassinet, on her abdomen, and had turned her head to the side. When a Warwick patrolman routinely questioned defendant, however, defendant told him that he had laid Tina in the bassinet on her back and that she apparently had rolled over, turned white, and stopped breathing.

Because it appeared that Tina had died a crib death, the state medical examiner's office ordered an autopsy performed. Doctor John Grauerholz, a specialist in forensic pathology, found a small scratch on Tina's right nostril and a small bruise on the underside of her chin. An internal examination revealed hemotoma on the tissue of the scalp in the area between the scalp and the skull. Inside the skull the doctor found bilateral bleeding over the surface of the brain and another bruise on the brain itself, directly under the bruise on the skull. As a result of the autopsy Dr. Grauerholz contended that the death had been caused by a contusion of the brain, subdural hemorrhage, and brain swelling following an injury inflicted by a blunt object. In his opinion the manner of death was homicide.

Relying on this medical evidence, police called defendant in for questioning on May 15. The police gave defendant his *Miranda* rights and informed him that he was a suspect in a murder investigation. The defendant then related the same story he had given to Officer Pollitt the previous day. After being told that Tina had died from a head injury, defendant stated that he had briefly left Tina unattended on an ottoman while changing her diaper and that when he returned, he found her lying on the floor, apparently having fallen and struck her head. The defendant claimed that his initial hesitancy to tell the truth was due to the fact that he feared he would be found negligent in the care of the infant.

During questioning police telephoned Dr. Grauerholz who advised them that Tina sustained her head injuries as a result of having been struck by a moving object. The doctor told police that the typical reaction to this sort of injury would be for a child to fuss initially, then quiet down, and appear to go to sleep. The swelling of the brain within the skull would exert pressure that would lead to a progressive loss of consciousness and finally death.

When the police informed defendant that his second story differed from the findings of the medical examiner, defendant recanted. He told the police that he had been left in charge of Tina and her eighteen-month-old sister, Melanie, while their mother went to visit relatives. He became upset when Tina wet her diaper and began to cry. To quiet Tina, defendant placed her face down in the bassinet that was located in another room.[2] The defendant became more upset

---

1. The trial justice sentenced defendant to thirty-five years, twenty-five years to serve, ten years suspended, ten years probation upon parole or otherwise.

2. The defendant told police that when he placed Tina in the bassinet he grabbed her face hard and possibly left bruises on her chin. The attending hospital nurse testified that on the

when Melanie wet her pants. He spanked her once, and she too started crying. Tina continued to cry. The defendant said he became enraged, returned to the room where Tina was lying, picked up a plastic bottle of disposable baby wipes, and struck her in the back of the head. She fussed a bit, quieted down and appeared to go to sleep. When defendant checked on her later, she had stopped breathing.

After giving the police his written statement, defendant requested and was granted permission to telephone his mother and his attorney. A police officer later testified that defendant said to his mother: "I killed her. I have already given the police a statement that I hit her in the head and killed her." At trial defendant denied having said this.

The defendant was tried in the Superior Court for murder. At the close of the state's case, and later at the close of all the evidence, defendant made a timely motion for a judgment of acquittal with respect to the charge of murder. The trial justice denied defendant's motions, and the jury returned a verdict of second-degree murder. After the jury verdict, defendant made a timely motion for a new trial. The trial justice denied this motion and imposed a sentence of thirty-five years.

The defendant challenges the denial of his motion for a judgment of acquittal. He argues the evidence does not show premeditation, an essential element for a finding of first and second-degree murder. *State v. Crough*, 89 R.I. 338, 353, 152 A.2d 644, 652 (1959).

■ A motion for judgment of acquittal made pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure was formerly termed a motion for a directed verdict. *State v. Moretti*, 113 R.I. 213, 215, 319 A.2d 342, 343 (1974). In passing on a motion for judgment of acquittal, the trial justice must view the evidence in a light most favorable to the prosecution, drawing

therefrom every reasonable inference consistent with guilt. *State v. Gianoulos*, R.I., 404 A.2d 81, 82 (1979). Neither the weight nor the credibility of the evidence is to be considered at this stage of the proceeding. *State v. Murphy*, 113 R.I. 565, 569, 323 A.2d 561, 563 (1974); *State v. Riffkin*, 112 R.I. 308, 312, 309 A.2d 15, 17 (1973). If viewed in this light, the evidence introduced by the prosecution is insufficient to establish guilt beyond a reasonable doubt, the court must grant defendant's motion. *State v. Distante*, 118 R.I. 532, 536, 375 A.2d 212, 215 (1977); *State v. Rose*, 112 R.I. 402, 406, 311 A.2d 281, 283 (1973).

■ We are guided by these same standards in assessing the correctness of the trial justice's decision to deny defendant's motion for judgment of acquittal. *State v. Gianoulos*, R.I., 404 A.2d at 82. We find that the trial justice quite properly considered the evidence in a light most favorable to the state and reached reasonable inferences consistent with guilt. Expert medical evidence, policy testimony, and defendant's own statements gave rise to the clear inference that defendant had adequate time, however momentary, to harbor a fixed and deliberate design to strike the infant. *State v. Page*, 104 R.I. 323, 334, 244 A.2d 258, 264 (1968). From the totality of the testimony and the exhibits presented, the trial justice could also reasonably infer that defendant committed the act with malice, that is, with wanton disregard for the life of another or with an unjustified disregard for the probability of death or great bodily harm. *Commonwealth v. Paquette*, 451 Pa. 250, 301 A.2d 837 (1973). Accordingly, the trial justice was correct in denying defendant's motion for judgment of acquittal on the count of either first or second-degree murder. *See State v. Goff*, 107 R.I. 331, 336–37, 267 A.2d 686, 689 (1970).

■ Next, defendant claims that the trial justice improperly denied his motion for a

---

night of May 14 defendant said: "[i]f the baby has any marks on her face, she rubs her face when she's fussy." Doctor Grauerholz testified

that in his opinion Tina was too small to have inflicted bruises to her chin.

new trial under Super.R.Crim.P. 33 because the evidence did not show implied malice. In passing on this motion, the trial justice must have regard for the weight and credibility of testimony in light of his independent judgment. *State v. Carsetti*, 111 R.I. 642, 652, 306 A.2d 166, 172 (1973). If he determines that the evidence adduced at trial is sufficient for the jury, as factfinders, to conclude that it proves guilt beyond a reasonable doubt, he must deny the motion for a new trial. *State v. Barnes*, R.I., 409 A.2d 988, 992 (1979). "In ruling on the motion, the trial justice should articulate the facts on which he has based his ruling so that the reviewing court can ascertain whether he has overlooked or misconceived material evidence on a controlling issue or was otherwise clearly wrong in his decision." *Id.* at 409 A.2d at 992.

▮▮▮▮ The burden of proving error by the trial justice rests with defendant. *State v. Howard*, 114 R.I. 731, 738, 339 A.2d 259, 263 (1975). In discharge of this obligation, defendant asserts that his actions do not support a finding of implied malice because they neither tended to inflict great bodily harm nor exhibited a depraved heart or reckless and wanton disregard of the consequences of his acts.

▮▮▮▮ In this state it is well settled that malice, express or implied, is an element of first or second-degree murder. *State v. Fenik*, 45 R.I. 309, 314, 121 A. 218, 221 (1923). Legal malice can arise from either an express intent to kill or to inflict great bodily harm or from a hardness of the heart, cruelty, wickedness of disposition, recklessness of consequence, and a mind dispassionate of social duty. *See State v. Miller*, 154 Conn. 622, 228 A.2d 136 (1967); *Commonwealth v. Coleman*, 455 Pa. 508, 318 A.2d 716 (1974). Malice consists of an unjustified disregard for the possibility of death or great bodily harm and an extreme indifference to the sanctity of human life. *State v. Wilkerson*, 295 N.C. 559, 247 S.E.2d 905 (1978); *Commonwealth v. Lawrence*, 428 Pa. 188, 236 A.2d 768 (1968).

▮▮▮▮ Malice may be inferred from the attending circumstances surrounding a defendant's conduct. *Commonwealth v. Steele*, 448 Pa. 518, 295 A.2d 334 (1972). An intent to kill, necessary to support a finding of second-degree murder, may be inferred from an assault on a child or by blows without a weapon. *People v. McFee*, 35 Mich.App. 227, 192 N.W.2d 355 (1971); *State v. Lamborn*, 452 S.W.2d 216 (Mo. 1970). Malice may also be inferred from a single blow of the hand if it was likely to cause severe injuries to a young child. *State v. Mendell*, 111 Ariz. 51, 523 P.2d 79 (1974).

While defendant admits his actions were negligent and regretable, he contends that they did not show a heedless indifference to life and limb as is required by *State v. Arnold*, R.I., 404 A.2d 490 (1979). *Arnold* involved a car accident that resulted in a death. We there held that to support a conviction under the reckless-driving statute, G.L. 1956 (1968 Reenactment) § 31–27–1, the evidence in regard to a course of conduct must show a heedless indifference to the consequences, that is, recklessness. *Arnold*, however, is inapposite to a murder charge.

▮▮▮▮ In the present case we cannot accede to defendant's argument that the plastic bottle was not a deadly weapon, such as a pipe or hammer, which a reasonable person would have known would produce death. A deadly weapon need not be an instrument having an intrinsic character that is likely to cause death in all instances. It can be an object that it likely to produce great bodily harm or death from the manner in which it is used. *Government of the Virgin Islands v. Lake*, 362 F.2d 770, 775 (3d Cir. 1966); *State v. Mercier*, R.I., 415 A.2d 465 (1980). In *State v. Morris*, 564 S.W.2d 303 (Mo.App.1978) the court inferred malice where an eleven-month-old infant was killed by a blow to the head with an empty beer bottle. In the present case the intentional, willful act of defendant, a single blow with a plastic bottle to the head of a four-and-one-half-week-old infant, could reasonably be found to

demonstrate a wanton disregard for human life.

Malice can also be inferred from circumstances where there is disparity in size and strength between the victim and an assailant. *People v. Drumheller*, 15 Ill. App.3d 418, 304 N.E.2d 455, 457–58 (1973); *State v. Morris*, 564 S.W.2d at 312. Here the relative size and strength of the victim and defendant are in stark contrast. Tina Suttles was an infant who weighed only six pounds and measured nineteen and one-half inches in length; defendant was a thirty-one-year-old adult who had experienced no manner of stress or frustration that could conceivably justify, excuse, or present a circumstance of mitigation in defense of his conduct. *Dyson v. State*, 6 Md.App. 453, 251 A.2d 606 (1969); *State v. Goff*, 107 R.I. at 337, 267 A.2d at 689. His demands on the children far exceeded what they were capable of accomplishing at so young an age.

The defendant maintains he was only slightly upset at Tina and that he only flicked his wrist with the plastic bottle to startle her to sleep. At trial his testimony in regard to the cause and direction of his anger equivocated between Melanie because she wet her pants and Tina because she was crying. This testimony did not agree with statements imputed to him at the police station. Police testified that defendant admitted "whacking" Tina because he was angry with her.[3]

The defendant also argues that the findings and testimony of the state medical examiner, a chief prosecution witness on whom the trial justice placed considerable reliance in denying the motion for a new trial, showed defendant's conduct was not the type that would make implied malice applicable. We find this argument to be without merit. The medical evidence was convincing and credible and tended to rein-

force the testimony of other prosecution witnesses. Doctor Grauerholz testified that a child's fussiness can by symptomatic of a preexisting subdural hemotoma but that this was not true of Tina because of the contusion on her head. To cause such a wound he concluded that "fairly significant" force, from a distance of more than a foot, would have had to have been employed. It was his judgment that the blow had to have been swung in an arc in the direction of the victim.

Upon a review of the entire record, we are satisfied the evidence and testimony were sufficient to support a jury finding that defendant possessed legal malice and that he was guilty beyond a reasonable doubt of the offense charged. The trial justice was able to point to this ample evidence in approving the jury's verdict and in denying defendant's motion for a new trial. Accordingly, we find no error in his decision.

Lastly, defendant claims that the sentence imposed, although within the statutory limit, was excessive under the circumstances because he had no prior police record other than a charge of disorderly conduct.

We recognized in *State v. Fortes*, 114 R.I. 161, 172, 330 A.2d 404, 410–11 (1975), that even in the absence of express statutory authority this court has implied statutory and state constitutional power to review a sentence imposed under a sentencing statute. Our role in reviewing excessive sentence claims, however, is a limited one; it is to be exercised only in the exceptional instance. *State v. Giorgi*, R.I., 397 A.2d 898, 899 (1979). The judgment of the trial justice is not to be disturbed unless the record convincingly points to the conclusion that there was no justification for the sentence or that it was grossly disparate from sentences imposed for similar offenses.[4]

---

3. Police testified that defendant stated he was enraged at Tina and that he hit her hard. In his written statement to police defendant said he was angry at Melanie but that when Tina would not stop crying, he struck her. At trial defendant testified on direct examination that it was Melanie who slightly upset him. On cross-

examination defendant testified that he was slightly upset with Tina; later he admitted he was angry with her.

4. A punishment is excessive if it: "(1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than

State v. Rollins, 116 R.I. 528, 539, 359 A.2d 315, 321 (1976)

The defendant cites cases in which defendants indicted for murdering a child received lesser sentences. Those cases are distinguishable because those defendants, though indicted for murder, had been convicted of lesser crimes. The sentences imposed were the maximum permitted under the applicable sentencing statutes. Here, defendant was indicted and found guilty of murder. However, he did not receive the maximum sentence. Under the pertinent sentencing statute, G.L. 1956 (1969 Reenactment) § 11–23–2, as amended by P.L. 1973, ch. 280, § 1, "[e]very person guilty of murder in the second degree shall be imprisoned for not less than ten (10) years and may be imprisoned for life."

The record demonstrates that the trial justice made considerable reflection before imposing sentence. His decision was certainly not an easy one to make. He was keenly aware of the need to balance the conflicting goals of retribution and rehabilitation. While he was cognizant defendant was a first time offender, the nature of defendant's crime and the way he struck the victim were persuasive factors outbalancing this consideration. See State v. Crescenzo, 114 R.I. 242, 264, 332 A.2d 421, 433 (1975). Further, the trial justice pointed to a case brought before him approximately two years earlier in which a defendant had been convicted of killing a child and had received a sentence of forty years, twenty-five years to serve and fifteen years suspended.

Upon a review of all the relevant factors relied upon by the trial justice in imposing sentence, we are unable to conclude that the sentence was grossly disparate or excessive.

For the reasons stated, the defendant's appeal is denied and dismissed, the sentence of conviction is affirmed, and the case is remanded to the Superior Court.

the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *State v.*

*Vaccaro*, R.I., 403 A.2d 649, 652 (1979) (citing *Coker v. Georgia*, 433 U.S. 584, 592, 97 S.Ct. 2861, 2865, 53 L.Ed.2d 982, 989 (1977)).