223 A.2d 843.

STATE *vs.* PETER A. MANTIA.

NOVEMBER 7, 1966.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a complaint and warrant charging the defendant with operating a motor vehicle whose brakes were inadequate to control the movement of and to stop and hold said motor vehicle in violation of G. L. 1956, §31-23-4(1). It was tried before a jury in the superior court and resulted in a verdict of guilty. The trial justice denied

the defendant's motion for a new trial and he has duly prosecuted a bill of exceptions to this court.

From the evidence it appears that in the town of Johnston on September 13, 1962, at approximately 8:45 a.m., Police Officer Joseph R. Devine of the Johnston police department was dispatched to the intersection of Steere and Spring Drives to investigate an automobile collision. Steere Drive runs generally east and west while Spring Drive crosses it running north and south. Upon his arrival, Devine observed defendant's motor vehicle on Steere Drive several car lengths beyond the intersection headed in an easterly direction. It had struck another motor vehicle which had been proceeding in a northerly direction on Spring Drive.

The officer testified that during his investigation at the scene of the collision defendant told him that as he approached the intersection he went to apply his brakes and found that he had none; that his brake pedal went down to the floor; that he swerved to the right to avoid striking the automobile which was traveling northerly on Spring Drive; that he glanced off the left rear of the north-bound vehicle and stopped with the use of his hand brake some distance further down on Steere Drive; and that his brakes were not very good when he had left home earlier that day. The officer tested the foot brake in defendant's automobile and when he pressed down on the brake pedal it went clear to the floor.

Devine further testified that the intersection was 24 feet in width, that there was no curbing in this section of the town of Johnston and that both streets had recently been resurfaced. He stated that automobiles travel back and forth on Steere Drive.

The operator of the automobile which was struck by defendant substantially corroborated the officer's testimony as

to the statements made by defendant about the operating condition of his brakes prior to the collision.

The defendant who lived in Providence was about nineteen years old at the time of the incident. His testimony varied substantially in many material respects from that of officer Devine. He testified that he had worked in a manufacturing plant in Cranston until 8 a.m.; that upon leaving work he drove, as was his usual custom, a distance of some eight or ten miles to his fiancee's home so that he could take her to work; that he had picked her up and was proceeding in an easterly direction on Steere Drive; that as he approached the intersection of Spring Drive he saw the north-bound automobile; that he applied his foot brake, skidded into the other vehicle, bounced off it and continued around it; and that he stopped at the location described by the officer.

The defendant denied that he had made any statements to the investigating officer as to the improper functioning of his brakes at any time prior to the collision. To the contrary he said they were working properly and it was only after the collision that they failed to operate properly. He also presented evidence that his brakes had been repaired in May 1962, some four months before the collision.

The fiancee of defendent was a witness in his behalf. She too denied that defendant had made any of the admissions attributed to him by officer Devine and the operator of the second vehicle.

Although there was testimony that there were skid marks and liquid on the road, there was no evidence to identify the skid marks as being those of defendant's car nor was the liquid identified as either defendant's brake fluid or water from his radiator.

Although defendant has filed a bill containing 17 exceptions, he is pressing only four. In keeping with our established rule, the remaining 13 exceptions not being briefed

or argued are deemed to be waived. Of the four exceptions before us, three relate to the denial of his motion non obstante veredicto, his motion for a directed verdict and his motion for a new trial respectively. His fourth exception is to a portion of the charge given the jury.

We will first consider defendant's motion for judgment non obstante veredicto. At common law a judgment non obstante veredicto was given in civil cases on the motion of the plaintiff because the defendant's plea confessed the cause of action and set up matters in avoidance which were insufficient to constitute either a defense or a bar to the action. It was judgment for the plaintiff on the pleadings after the verdict for the defendant because the pleas of defendant did not present a defense. 49 C.J.S., Judgments §60, p. 148; Puterbaugh Common Law Pleading and Practice (10th ed.) §1103, p. 1285.

With the passage of time, the use of this pleading in certain jurisdictions has been extended to the defendants and has been expanded to include in consideration thereof the evidence in the cause. These modifications have been accomplished in some instances by judicial fiat and in others by legislative enactments. In Rhode Island, however, this motion has received our official recognition only in civil cases and its use has been limited to the plaintiff. *Burnham* v. *New York, P. & B. R.R.*, 17 R. I. 544; *Tillinghast* v. *McLeod*, 17 R. I. 208. The legislature has been silent in this field. We believe that such a motion has no standing in criminal trial procedures in this state. In the context in which it has been used in Rhode Island it would serve no useful purpose in a criminal case. It is unquestioned that in the trial of criminal cases the state could not present such a motion. Once the jury had returned a verdict for the defendant, the prosecution would be terminated. Under our practice the court could not grant the state a new trial much less render a verdict in its behalf on any motion non

obstante veredicto. The same issues which defendant seeks to resolve here can be raised and determined either by a motion for a directed verdict or by a motion for a new trial with exceptions taken to their denial. This he has done.

The defendant in pressing his exceptions to the denials of his motions for a directed verdict and for a new trial contends that the trial justice's ruling on each was erroneous because his conviction cannot stand as it is based solely on his admissions to officer Devine as to the condition of his brakes before the collision. He also contends that no evidence was presented to show that Steere Drive was a "public highway" within the contemplation of G. L. 1956, §31-1-23(a).

In his brief he sets forth the proposition that a defendant in a criminal case cannot be convicted solely on his own admission and cites in support thereof *Smith* v. *United States,* 348 U. S. 147. We are in full accord with this principle. *State* v. *Boswell,* 73 R. I. 358.

In this case, however, the record shows that there is additional evidence which corroborates the oral admissions made to the police officer by defendant. Officer Devine's testing of defendant's brakes and the result thereof constitute the necessary link.

This testimony takes the instant case out of the strictures laid down in *Smith* and *Boswell* and places it within the purview of *State* v. *Jacobs,* 21 R. I. 259, and *State* v. *Wheeler,* 92 R. I. 389, where we said that an admission is sufficient to sustain a conviction if there is some corroborative evidence produced tending to prove the corpus delicti. We pointed out in those cases that it was not necessary to establish the corpus delicti beyond a reasonable doubt before an admission could be received into evidence. The admission is used to supplement the proof in establishing the crime beyond a reasonable doubt. This is what occurred in the case before us.

In reply to defendant's contention that there is no evidence in the record to show that Steere Drive is a "public highway" within the meaning of the statute in question, we have only to point to the cases of *State* v. *Scofield*, 87 R. I. 78, and *State* v. *Wheeler, supra*, wherein we held that this statute does not require proof that the highway in question is a "public highway."

The defendant here is charged with a violation of a provision of what is commonly called the motor vehicle code act. The particular chapter of the code before us, chap. 23 of title 31, expressly states that it applies to the operation of improperly-equipped motor vehicles "on any highway" in this state. Section 31-1-23(a) defines "highway" as follows: "Street or highway. The entire width between boundary lines of every way when any part thereof is open to the use of the public for purposes of vehicular traffic." Devine, an experienced officer of the Johnston police department, stated that cars travel back and forth on Steere Drive. In addition we have further testimony that this street had recently been resurfaced and that it formed an intersection with Spring Drive. The defendant himself testified that he used Steere Drive daily. The operator of the other motor vehicle presented evidence of the use of this street when she stated that trees on the corner of the intersection blocked her view of Steere Drive and as a consequence she usually slowed down there because of the possibility of cars approaching from the east on Steere Drive. We believe that the record contains sufficient evidence to show that Steere Drive was a highway within the provisions of the motor vehicle code.

It follows, therefore, that there is no merit in defendant's exception to the denial of his motion for a directed verdict. On such a motion it is well settled that all evidence and the inferences therefrom must be viewed most favorably to the party against whom the motion is made, in this in-

stance the state. *State* v. *Ephraim*, 80 R. I. 321. When we apply the rule here, there was no error in the denial of defendant's motion and his exception thereto is overruled.

Neither can we sustain defendant's exception to the denial of his motion for a new trial. From our examination of the record we are of the opinion that in passing on defendant's motion the trial justice did not overlook or misconceive any of the material evidence, that he considered the evidence in an exercise of his independent judgment and that he concluded therefrom that the jury's verdict of defendant's guilt was well warranted. In these circumstances we cannot say that his decision denying defendant's motion for a new trial was clearly wrong.

In considering defendant's last exception we deem it necessary to set out the pertinent portions of the charge given the jury on the definition of the term "reasonable doubt."

"You have heard the expression 'beyond a reasonable doubt' several times in my charge and before my charge, and it means simply this, that after you have retired to your jury room and have gone over the evidence on both sides of the case, the witnesses produced by the State, and those produced by the defendant, and have analyzed the same, considering the witnesses as they appeared before you, decide for yourselves from their appearance how much weight ought I to give to their testimony, what opportunity did they have of testifying or knowing about the facts to which they testified, what is their interest in the outcome of the case, if any, how do they strike me, do they strike me as telling the truth or otherwise. Considering the testimony along these lines, and giving the testimony the weight you think it deserves, boiling it all down, and if there remains in your mind after doing that an abiding conviction amounting to a moral certainty that the defendant is guilty of the offense as charged, then the State has proven its case beyond a reasonable doubt, and it is your duty to say guilty. If, however, you are uncertain about any of the material elements of the offense charged, you have not that abiding conviction

amounting to a moral certainty that the guilt of the defendant has been proven beyond a reasonable doubt, then of course the State has failed in its duty and you are obliged to say not guilty.

"Now, another definition the Court could give you as to reasonable doubt is that it is not a mere possible doubt, a speculative or conjectural or fanciful doubt. If you have only that sort of doubt of the defendant's guilt, then you should convict him. If, on the other hand, you do have a real, actual substantial doubt of his guilt, that would be a reasonable doubt, and it would be your duty to acquit him under those circumstances."

The defendant took an exception to the presence of the term "substantial" in the last above-quoted paragraph because he alleges that its use is prejudicial to him in that in effect the burden was shifted to him to show a substantial reason why he should not be found guilty. We disagree.

The constituent elements of "reasonable doubt" were enumerated by Chief Justice Shaw in *Commonwealth* v. *Webster,* 59 Mass. 295, 320, when he said:

"It is a term often used, probably pretty well understood, but not easily defined. It is not mere possible doubt; because every thing relating to human affairs and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge."

In *State* v. *Andrews,* 86 R. I. 341, we stated that the phrase "reasonable doubt" required no definition. It is apparent, however, from our research that from the time Chief Justice Shaw first set down this definition in the eighteen hundreds up until today, the space age, courts have been engaged in increasing attempts to clarify this phrase. Their attempts have resulted in a multitude of litigation. There

seems to be today, however, general agreement that to constitute a reasonable doubt there must exist an actual, substantial doubt of a defendant's guilt arising from the evidence or want thereof as contradistinguished from a mere suspicion or apprehension or imaginary doubt. A compilation of cases wherein the use of the word "substantial" has been approved in defining the term "reasonable doubt" can be found in 36 Words and Phrases (perm. ed.) p. 525.

We stated in *State* v. *Fish*, 49 R. I. 397, that in considering the validity of a charge given a jury a single sentence may not be taken out of context to show an incorrect statement of law. We consider the charge as a whole.

Here we have examined the entire charge with particular emphasis on the particular portion complained of by the defendant and are satisfied that the charge as given was correct. It is apparent that in the portion of the charge wherein the word "substantial" is used, the trial justice was telling the jury that any doubt which would absolve the defendant from guilt must have some foundation to it and not be fanciful or imaginary. The jury was neither confused nor misled, nor was the defendant prejudiced in any way by its use. This exception is overruled.

All of the defendant's exceptions briefed and argued are overruled and the case is remitted to the superior court for further proceedings.

*J. Joseph Nugent,* Attorney General, *Corinne P. Grande,* Special Assistant Attorney General, for State.

*Kirshenbaum & Kirshenbaum,* for defendant.