**277 A.2d 303.**

STATE *vs.* VINCENT POPE, JR.

MAY 17, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. On February 11, 1968, at approximately five o'clock in the morning an incident occurred in a dwelling located at 181 West Clifford Street in the city of Providence which resulted in the indictment of the instant defendant

and Douglas S. Gomes for the robbery of one Joseph B. Martin, Jr. Both defendants were tried together before a Superior Court justice and a jury which returned verdicts of guilty.

Thereafter, Gomes was sentenced and committed.

The appellant was also sentenced but seasonably prosecuted a bill of exceptions to this court which contained 96 exceptions taken during the course of the trial. Of these, only nine have been briefed and orally argued, and under our well-established practice the exceptions not so briefed and argued are deemed to have been waived. *State* v. *Quattrocchi,* 103 R. I. 115, 235 A.2d 99; *State* v. *Wright,* 105 R. I. 556, 253 A.2d 593.

Moreover, five of his exceptions which were briefed and argued are so lacking in merit, whether viewed separately, collectively, or in relation to the remaining four require little discussion.

Two of these relate to portions of the trial court's instructions to the jury which when considered in the context of the complete instructions are perfectly proper. *State* v. *Mantia,* 101 R. I. 367, 223 A.2d 843.

Two others were taken to comments of the trial justice regarding conduct of defendant's counsel. The comments complained of were softened by the trial justice's instructions to the jury, but without such instructions, would fall within the latitude which must be accorded to a trial justice who is charged with the responsibility for the prompt and orderly conduct of the trial. See *State* v. *Fenik,* 45 R. I. 309, 121 A. 218; *Bryant* v. *State,* 207 Md. 565, 115 A.2d 502.

The fifth exception lacking merit is so frivolous as to require no discussion whatsoever.

This brings us to a consideration of appellant's remaining four exceptions.

In *State* v. *Pepper,* 103 R. I. 310, 327 A.2d 330, we held

that there could be a series of errors, which viewed in their cumulative entirety create the reasonable probability that the totality of the errors influenced the verdict, thereby depriving defendant of the fair trial to which he was entitled under the due process clause of the fourteenth amendment to the Federal Constitution and the provisions of art. I, sec. 10 of the state constitution. This, although no one of such errors considered singly, would constitute reversible error.

It is in contemplation of the rule thus enunciated that we turn to a consideration of the remaining exceptions.

The evidence establishes that a so-called floating crap game was in progress when appellant, aided by codefendant Gomes, allegedly shot and robbed Martin, a participant in the dice game. This was Martin's version which was corroborated by the prosecution witnesses. The defense, however, offered testimony designed to prove that the altercation which the state witnesses depicted as a robbery was in fact a brawl precipitated by appellant's insistence that Martin was using loaded dice. Be that as it may, there is no contention here that the weight of the evidence preponderates against the verdict. Rather, it is to a comment made by the trial justice and the latter's denial of three separate motions to pass that appellant contends in his argument that he has been deprived of a fair trial.

The first of these relates to a comment made by the trial justice on an objection made by counsel for the state during cross-examination of the alleged victim, Martin. It is undisputed that alcohol was being sold and defense counsel was attempting to establish that the premises were unlicensed and the time was after hours. The assistant attorney general objected on the grounds of immateriality. Commenting on the objection and before ruling thereon, the trial justice, in the presence of the jury, stated in

pertinent part: "Well, it isn't very material whether it was an illegal crap game or an illegal after-hours drinking establishment. That doesn't give anybody any right to rob anybody."

Defense counsel took exception to this comment, but made no motion to have the case passed, and the trial justice gave no cautionary instructions. See *Lavigne* v. *Ballantyne*, 66 R. I. 123, 17 A.2d 845. However, relying on *State* v. *Fenik*,[1] *supra*, defendant argues, in essence, that since the whole of the instant case turns on the credibility question of whether Pope had robbed Martin, the comment of the trial justice was such as to indicate to the jury that the incident had been a robbery. The state argues vigorously that to so construe the cited comments is to distort them beyond their plain and ordinary meaning. In the view we take of this exception when related to the remaining three contentions, it is unnecessary to decide whether this exception standing alone merits reversal.

Rather, we turn to a consideration of each of defendant's exceptions taken to denials of his motions to pass. In *Lavigne* v. *Ballantyne, supra,* at 126, 17 A.2d at 846, we held:

> "When improper and extraneous matter of a harmful nature is intentionally injected or accidentally creeps into the evidence, it is the duty of the trial justice, upon complaint being made, to free the evidence from such matter, if possible, with proper warning to the jury. On the other hand, if this is not reasonably possible, then he ought to pass the case."

In considering the applicability of the aforestated rule

---

[1] There, referring to comments made by the trial justice in the presence of the jury to which defendant duly excepted, this court stated at page 316: "Regardless of the soundness of his conclusion, it was his duty to exercise scrupulous care that the jury should not be influenced in their finding of fact by what they believed to be the opinion of the judge."

to the instant proceedings, a limited background discussion is appropriate.

Among those persons in attendance at the situs of the alleged robbery was one Linda Harris described as the girl friend of codefendant Gomes. During cross-examination of a prosecution witness, the witness stated that Linda Harris did not arrive with defendants but some time later. He then added the following statement to which defendant directs our attention:

> "The reason I know she came in after they had came [come] in, because she was so hopped-up off what they had been using until she completely fell out in my chair as soon as she entered the house."

Counsel for defendant thereupon stated:

> "Your Honor, I ask that portion of the answer which is not responsive be stricken, and I have a motion."

At the direction of the trial justice the question was reread after which the trial justice asked for the reaction of counsel for the state. He replied: "As far as the portion, I think he described how he knew that she came in." The trial justice then stated:

> "He wasn't asked that. That's why I had the question read. The balance of the answer may be stricken. The jury will disregard it."

What it was that the jury was to disregard, however, was left for them to ponder.

In any event, defense counsel stated that he had a motion and the trial court called a recess. Arguing that in this era of public awareness of narcotic promiscuity and its alleged tendency to promote crime, defense counsel moved that the case be passed on the ground that the witness' gratuitous indication that defendant and his codefendant used and had been using drugs was so prejudicial "that no charge on the part of your Honor could wipe this from their minds." The trial justice responded: "Denied; exception."

Later in the course of the trial, defendant called as a witness one Sylvester Riggins who was present at the time and scene of the alleged robbery. On cross-examination, this witness was asked by counsel for the state as to whether he had discussed with defendant the possibility of testifying at the latter's trial. Responsive answers to this line of questioning elicited the information that there were discussions at one of which defendant Pope informed Riggins that he intended to subpoena the latter. Counsel for the state then asked rhetorically: "But you discussed these things in the yard, don't you?" The witness replied: "We don't get in the yard together," to which counsel for the state commented, "You don't?"

Counsel for defendant thereupon stated that he had a motion to which the trial justice responded: "Save it until later. You may proceed."

Cross-examination continued and concluded with the state establishing that the witness was presently serving a five-year sentence at the Adult Correctional Institutions.

A recess was then called and in the absence of the jury, counsel for defendant made known that his motion was to pass the case on the basis of the information elicited by the state that defendant was presently confined. He argued to the trial justice that the state's gratuitous suggestion that the discussions between defendant Pope and Riggins took place in the prison yard pinpointed defendant Pope's incarceration and was highly prejudicial.

The trial justice gave it as his impression that discussions "in the yard" were with persons other than defendant and denied the motion.

Still later in the course of the trial, there occurred another incident which prompted defendant counsel to move that the case be passed. In rebuttal, the state called a Providence police detective who had questioned the victim Martin at the Rhode Island Hospital after learning of the

incident which lead to the arrest of Douglas Gomes and the instant defendant Pope. This witness, in direct examination, testified that following his questioning of Martin he went to a house at 206 Dudley Street where he "apprehended Dougie Gomes." It should be noted that continuously throughout the trial, codefendant Gomes was referred to as Dougie. On cross-examination the detective was asked how he remembered the house and address at Dudley Street. He replied: "I remember the address. Well, I remember every address I've grabbed Dougie at."

Defense counsel thereupon stated that he had a motion. The trial justice replied: "You can put it on the record later. What's all the acting about? You can put it on later." To which defense counsel stated: "Exception, your Honor please."

It is clear from the record that defense counsel was given no opportunity to argue to the trial justice as he did to this court that the clear implication of the detective's observation was that codefendant Gomes had been in numerous brushes with the law, although, significantly, the record establishes that no effort was made by the state to impeach Gomes who had testified for the instant defendant.

The defendant argued before us that each of the four exceptions herein discussed was taken to an incident which considered singly is so prejudicial as to constitute reversible error. In support thereof, he cites cases which, when read, disclose that a new trial was ordered by this court only because there were several instances of questionable rulings. Classic among such cases is *State* v. *Fenik, supra.*

However, in view of the total record here, we are not called upon to decide that any one of the exceptions considered and discussed raises such a question of uncertainty regarding the fair trial concept when applied to the trial of the instant defendant amounts to reversible error. Rather, it is in the amalgam of error which leads us to

conclude here as we did in *State* v. *Werner,* 87 R. I. 314, 140 A.2d 502, that when we cannot say with assurance that the verdict was reached as a result of a fair and impartial trial, it is our duty to order a new trial.

The defendant's exceptions in question are sustained, and the case is remitted to the Superior Court for a new trial.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Scott K. Keefer,* Special Asst. Attorney General, for plaintiff.

*James Cardono,* Public Defender, *William F. Reilly,* Asst. Public Defender, for defendant.