397 A.2d 500.

STATE *vs.* JOSEPH L. DAROCHA *et al.*

JANUARY 29, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

DORIS, J.  On October 22, 1976, Joseph Manuel DaRocha (Manuel) and his brother Joseph Louis DaRocha (Louis) were convicted of second-degree murder in a Superior Court jury trial. On appeal they argue that the trial justice failed to assess independently the credibility of the state's witnesses in ruling on, and denying, their motion for a new trial. Furthermore, they contend that the denial of their motion for a new trial was improper because the evidence was insufficient to support the verdict.

On the evening of March 21, 1976, Louis was driving a white Cadillac in the Kennedy Plaza section of downtown Providence. At sometime around 11 o'clock the occupants of the DeRocha car exchanged insults and gestures with Jose Cruz, Jr. (Cruz), the deceased, and his friends, who were cruising the plaza area in their automobiles. These affronts culminated in a physical confrontation when Cruz went up to the DaRocha car, struck Louis in the face, and knocked off his glasses.

Louis then left the area and a short time later arrived at the Pine Grove nightclub in East Providence, where he met and conferred with his brother Manuel. Shortly thereafter the two brothers left the nightclub accompanied by Joseph Bandarra, Carlos Pavao, and two minors. This group went to the DaRocha home in East Providence where they all got into the white Cadillac that Louis had been driving earlier. Manuel had acquired a rifle in his home and took it with him into the car, where he sat on the passenger side of the rear seat. Bandarra sat beside him in the middle of the rear seat, next to Pavao, who sat on the driver's side.

With Louis driving, they proceeded to the Kennedy Plaza. Here they came upon Cruz and his group. When the DaRocha car appeared, Cruz ran toward it brandishing a section of metal chain. Bandarra and Pavao testified that when Cruz drew near the driver's side of their car, he swung the chain at them, causing them to crouch over in apprehension. At that moment, they stated, Manuel, who was still holding the rifle, leaned over them toward the driver's side window. They

both then heard the sound of a gunshot. Pavao testified that he heard a second shot. Because of their crouched position, however, both stated that they did not actually see Manuel fire the rifle. Immediately after the gunshot they left the scene in their car. Pavao testified that Cruz was standing as they were leaving, but was on the ground when he looked back through the rear window as they drove away. Bandarra testified that Cruz was lying on the ground at the moment they departed.

Two of Cruz' friends also testified. John F. Van Wormer and Michael Pellegrino told the court that they were about 25 feet away from the DaRocha car when the shooting occurred. They testified that when Cruz got to within 3 feet of the white Cadillac, they saw a gun barrel protrude from the rear window on the driver's side. They said that they could not, however, see who was holding the gun. They stated that when the barrel appeared, they saw Cruz turn to run away. They both testified that at that moment they heard a gunshot from the DaRocha car. Pellegrino thought that he heard two shots. Van Wormer stated that he saw a flash and a puff of smoke from the gun barrel. Both saw Cruz fall to the ground.

The state's final witness was the state medical examiner. She testified that Cruz' death was a homicide caused by a gunshot wound through the chest. The state did not produce the murder weapon or the fatal bullet. Neither defendant testified.

The trial justice correctly instructed the jury on the difference between first and second-degree murder, emphasizing that the duration of premeditation was the crucial distinguishing factor. Furthermore, he charged the jury that if one of the defendants aided, encouraged, or incited the other in the commission of the homicide, both would be guilty in the same degree as the primary actor. See G.L. 1956 (1969 Reenactment) §11-1-3. The defendants did not object to this charge. The charge consequently became the law of the case and was binding on the jury. Applying the law as

given it, the jury concluded that both defendants were guilty of murder in the second degree.

In *Barbato* v. *Epstein*, 97 R.I. 191, 196 A.2d 836 (1964), we outlined the duties of a trial justice when ruling on a new trial motion. *Barbato* explains that the trial court must exercise its independent judgment in evaluating the evidence and must make its own independent assessment of witness credibility. This process completed, the court must then decide if the standard of proof in the case is met by what the court perceives as the credibile evidence. We have never held, however, that the trial court need expressly articulate its every thought on these matters. *E.g.*, *Gordon* v. *Campanella Corp.*, 112 R.I. 417, 311 A.2d 844 (1973); *State* v. *Tate*, 109 R.I. 586, 288 A.2d 494 (1972). Rather, it is sufficient if we can discern from the record that the court conscientiously applied the aforementioned standards. And the burden is clearly on the moving party to convince us that the trial court has failed to do this. *State* v. *Lima*, 113 R.I. 6, 316 A.2d 501 (1974). The moving party must show that the trial court misconceived or overlooked material evidence in ruling on the motion. *State* v. *Card*, 105 R.I. 753, 255 A.2d 727 (1969).

In this case defendants have not demonstrated that the trial court erred. We note at the outset that there was little serious dispute about the facts. The thrust of defendants' trial position was that the state's evidence taken as true failed to show guilt beyond a reasonable doubt. Accordingly, the trial justice, in ruling on the new trial motion, addressed the bulk of his comments to the inferences that could be drawn from the evidence. His many references to the testimony to buttress his findings lead us to conclude that he accepted, albeit implicitly, the credibility of the state's witnesses. Indeed, he expressly noted that Pavao struck him as a reluctant witness who was not telling all that he knew of the incident. In light of all of this, we are of the opinion that the court correctly applied our standard for a new trial motion.

The defendants next contend that they should have been granted a new trial because the trial evidence was insufficient

to establish guilt beyond a reasonable doubt. They point out that no one testifed that they saw Manuel pull the trigger of the rifle that he was holding. Moreover, they argue, the state did not produce either the fatal bullet or the murder weapon that would allegedly link Manuel to the crime. At oral argument counsel for defendants suggested that the fatal shot could have come from anywhere, that is, that a reasonable hypothesis, other than what the jury concluded, could be drawn from the circumstantial evidence. It is their position that for these reasons the weight of the evidence was insufficient to support the verdict.

In light of recent Supreme Court case law, however, we must consider their argument for a new trial as an appeal from the trial court's denial of their motion for a judgment of acquittal.[1] In the recent case of *Burks* v. *United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978),[2] the Supreme Court held that the grant of a new trial because of an insufficiency of evidence to convict, contravenes the double jeopardy clause of the fifth amendment to the United States Constitution. *Id.* at 16, 98 S. Ct. at 2150, 57 L. Ed. 2d at 14. There is no question but that in the instant case the *Burks* decision would prohibit retrial for the reasons advanced by defendants.[3]

Turning to the facts before us, we believe that the evidence adduced by the state was overwhelming. Likewise, the inferences drawn from the evidence by the trial court were eminently reasonable. There was evidence that when Cruz approached, Manuel leaned over toward the driver's side

---

[1]*Cf. State* v. *Mantia,* 101 R.I. 367, 223 A.2d 843 (1966) (motion for judgment non obstante verdicto not recognized in criminal cases; issues raised by motion for directed verdict of acquittal or for new trial).

[2]The companion case of *Greene* v. *Massey,* 437 U.S. 19, 98 S. Ct. 2151, 57 L. Ed. 2d 15 (1978), held *Burks* applicable to the states. *See Benton* v. *Maryland,* 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

[3]We leave for another day consideration of the full impact of the *Burks* case on our new-trial rule for criminal cases. Compare *Burks* v. *United States,* 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978) *with State* v. *Conteras,* 105 R.I. 523, 253 A.2d 612 (1969).

window with the rifle in his hands. Furthermore, there was evidence that at this time a gun barrel protruded from the DaRocha car and fired, whereupon Cruz fell to the ground mortally wounded.

From this evidence the trial justice could reasonably infer that Manuel shot and killed Cruz. Indeed, we perceive no other reasonable hypothesis.[4] *See In re Caldarone*, 115 R.I. 316, 345 A.2d 871 (1975); *State v. Rose*, 112 R.I. 402, 311 A.2d 281 (1973).

We note parenthetically that circumstantial evidence is every bit as probative as direct evidence. *State v. Rose, supra* at 407, 311 A.2d at 284. In proving its case by circumstantial evidence, the state need only prove its case beyond a reasonable doubt; it need not assuage every doubt or speculation. As one court has observed:

> "Inference is never certainty, but it may be plain enough to justify a finding of fact." *Tortora v. State*, 269 N.Y. 167, 170, 199 N.E. 44, 45 (1935).

The defendants have not shown that there was insufficient evidence to support their conviction.

The defendants' appeal is denied and dismissed, the judgments of conviction are affirmed, and the case is remanded to the Superor Court.

*Julius C. Michaelson*, Attorney General, *John S. Foley*, Special Assistant Attorney General, for plaintiff.

*Howard K. Simmons*, for defendants.

---

[4]The defendants also argue in their supplementary brief that a conviction based upon insufficient evidence is invalid under the due process clause of the fourteenth amendment. *Thompson v. Louisville*, 362 U.S. 199, 80 S. Ct. 624, 4 L. Ed. 2d 654 (1960). But because we find the evidence in this case so probative of guilt we find no merit in this contention.