STATE

v.

**Donald COLBERT.**

No. 86–368–C.A.

Supreme Court of Rhode Island.

Nov. 4, 1988.

James E. O'Neil, Atty. Gen., Jane M. McSoley, Asst. Atty. Gen., for plaintiff.

Paula Rosin, Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

KELLEHER, Justice.

A Superior Court jury found the defendant, Donald Colbert, guilty of possession of marijuana with intent to deliver, a violation of G.L. 1956 (1968 Reenactment) § 21–28–4.01(A)(2)(a), as enacted by P.L. 1974, ch. 183, § 2, art. IV. The defendant appeals this conviction, alleging primarily an insufficiency of evidence. Hereafter we shall refer to the defendant by his last name.

The relevant facts are as follows. On February 11, 1980, Colbert, along with his friend Melanie, drove to T.F. Green Airport in Warwick and went to the U.S. Air freight terminal for the ostensible purpose of claiming a barrel of personal items that had been sent to him by his mother-in-law, who resided in Jamaica. According to Colbert, his mother-in-law was in the process of changing residences and no longer needed some of the items that were in the barrel. After Colbert had presented U.S. Customs Service Officer Philip Shea with a list of items in the barrel, he executed a form 7523, which authorizes duty-free im-

portation of goods of negligible commercial value. At that point Colbert was totally unaware that drug-detecting dogs at New York's Kennedy Airport had previously identified the Colbert barrel as containing "narcotics of some type."

Officer Shea asked Colbert and Melanie to accompany him, an airline representative, and two patrol officers to U.S. Air's bonded cargo holding area. Once Colbert arrived at the designated area, he identified a fiberboard drum carrying his name and address as the one he expected. He removed the drum's cover and began to inspect its contents.

After removing many household items such as plastic cups and plates, silverware, dishes, glassware, used clothing, 45 r.p.m. records, and a butter dish, Colbert came upon many clear plastic bags containing a green vegetable matter. The barrel contained twenty-eight bags having a combined weight of 19.44 pounds of a substance that was later identified and classified as marijuana. Upon discovering the plastic bags, Colbert jumped back in surprise and said, "I don't know what that stuff is. This must be some kind of a joke." However, the two patrol officers were not joking as they placed Colbert under arrest on the charge of possession of marijuana with intent to deliver.

■ At the conclusion of the state's evidence Colbert made a motion for a judgment of acquittal. The trial justice explained that when considering such a motion, he was required to view the evidence in the light most favorable to the state and draw from all the evidence only those inferences consistent with Colbert's guilt. After the conclusion of the prosecution's evidence, Colbert proceeded to introduce evidence in his behalf, but his trial counsel failed to renew his motion for a judgment of acquittal at the close of the presentation of all the evidence.[1] This court has held that upon a denial of a motion to dismiss made at the close of the state's presentation of evidence, the issue of its denial is preserved on appeal only if the defense rests its case at that time or renews the

motion to dismiss at the conclusion of the presentation of all the evidence. *State v. Grullon*, 117 R.I. 682, 689, 371 A.2d 265, 268 (1977). Since Colbert's counsel failed to renew the motion for acquittal, any review of the denial of the judgment of acquittal is foreclosed. However, we have never held that the waiving of the right to appeal a denial of a motion for judgment of acquittal acts as a waiver of a right to appeal the denial of a motion for a new trial when it is based upon a claim of insufficient evidence of guilt. In fact, on several occasions this court has reviewed the sufficiency of evidence as it considered the denial of a motion for a new trial. *State v. Perkins*, 460 A.2d 1245, 1247 (R.I. 1983); *State v. DaRocha*, 121 R.I. 182, 186, 397 A.2d 500, 502 (1979).

The rationales of *Perkins* and *DaRocha* are based on the holding of *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L. Ed.2d 1 (1978), where the United States Supreme Court precluded a retrial of an accused once a court finds that the evidence presented is legally insufficient to support a verdict of guilt beyond a reasonable doubt. The *Burks* Court also emphasized that a challenge to the sufficiency of the evidence can certainly be mounted by a motion for a new trial. 437 U.S. at 17–18, 98 S.Ct. at 2150–51, 57 L.Ed.2d at 13–14. Since the due-process clause of the Fourteenth Amendment protects an individual from a conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged," *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970), we shall now examine Colbert's claim relative to the insufficiency of the evidence.

■ In Rhode Island possession within the context of a criminal statute means an intentional control of an object with knowledge of its nature. *State v. Jenison*, 442 A.2d 866, 875 (R.I. 1982); *State v. Gilman*, 110 R.I. 207, 215, 291 A.2d 425, 430 (1972). Knowledge of the nature of the object must necessarily precede the exercise of

---

1. Colbert's appellate counsel was not his counsel    at trial.

such control. *State v. Gilman*, 110 R.I. at 215, 291 A.2d at 430. Proof of the knowledge of the object, which is essential to conviction, may be shown by evidence of acts, declarations, or conduct of the accused from which an inference may be drawn that he or she knew of the existence of narcotics at the place where they were found.

■ With regard to the element of knowledge, the record is replete with evidence from which a jury could infer that Colbert knew that the barrel contained marijuana. Colbert admittedly spent over $60 to transport household goods from Jamaica to Providence that he admits had a value of less than $100. Again, upon its arrival at Green Airport, the barrel was only one-third full of household items and two-thirds full of marijuana. Surely if only the personal items were intended to be the cargo, a more cost-efficient container would have been used. The drum was shipped by bonded freight to Colbert in care of J.F. Moran Company, a noted custom-house broker. Evidence introduced at trial established that it was very uncommon for noncommercial shipments to be bonded because of the increased transportation costs involved. Finally, Colbert told Inspector Shea that the package had been sent to him by his mother-in-law when in fact Melanie testified that as far as she knew, Colbert was a bachelor. Relying upon the reasonable inferences that can be drawn from the evidence we have just summarized, we are convinced that a jury could find beyond a reasonable doubt that, like the canine detectives at Kennedy Airport, Colbert was fully aware of the presence of the "grass" in the barrel.

■ Turning to the control issue, the evidence regarding possession of the barrel is, for the most part, undisputed. Colbert presented to Inspector Shea an American Airlines freight bill containing a number that matched the number on the barrel in question. He identified himself by using a valid driver's license and gave Inspector Shea a list of items supposedly resting in the barrel. Colbert estimated the value of the goods to be less than $100 and filled out a requisite form that permitted a duty-free importation. After being escorted to a caged area, Colbert identified his package, opened it, and began to remove its contents. The record clearly indicates that at no time did the inspector remove the items from the barrel.

These facts clearly indicate that Colbert had the requisite control of the barrel as set forth in *Gilman*. He could do nothing more in regard to taking possession of the drum short of carrying it out to Melanie's automobile. Nothing stood between Colbert and his complete dominion over the barrel except for the inspection that would permit a duty-free importation. Consequently we are persuaded that the state presented ample evidence from which the jury could conclude beyond a reasonable doubt that Colbert had the intent and in fact had control of the barrel and all its contents. In fact, he had actual control of the contents from the time he opened the barrel until the plastic bags were revealed.

It should be noted that the trial justice, in his charge to the jury, emphasized that the control need not be of a specific duration, but a conviction could be had even if the control of the barrel were momentary. It is obvious that Colbert's thespian efforts to express shock and surprise failed to convince the inspector, the jury, or the trial justice. The remaining issue relates to proof of intent to deliver the marijuana to others. General Laws 1956 (1968 Reenactment) § 21–28–1.02(8), as enacted by P.L. 1974, ch. 183, § 2, art. I, defines "[d]elivery" as the "actual, constructive, or attempted transfer of a controlled substance."

■ Evidence presented at trial established that the total weight of the marijuana in the barrel was 19.44 pounds. Inspector Leo Gracik, a veteran member of the Rhode Island Division of Drug Control, told the jury that in the marijuana trade, every ounce is divided into 40 joints (marijuana cigarettes). Thus simple mathematics indicates that Colbert's barrel contained enough marijuana to make 12,441 joints. This evidence forms a sufficient basis from which the jury could find that Colbert in-

tended to deliver the marijuana to others. Any belief that the nineteen-plus pounds of marijuana were intended for Colbert's personal consumption is totally unreasonable.[2] Consequently we believe that the jury had ample evidence to support the inference that Colbert did not intend this great quantity of marijuana for his personal use.

Colbert's appeal is denied and dismissed; the judgment appealed from is affirmed.

**2.** The 12,441 joints would allow an individual such as Colbert to smoke one a day for over thirty-four years or three a day for over eleven years. We believe that the evidence clearly negates any reasonable conclusion that Colbert was receiving the marijuana for his personal use.