STATE

v.

Joseph MEDEIROS.

No. 90–410–C.A.

Supreme Court of Rhode Island.

Nov. 20, 1991.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Aaron L. Weisman, Asst. Attys. Gen., for plaintiff.

Mary E. Levesque, Middletown, for defendant.

## OPINION

KELLEHER, Justice.

A Newport County grand jury returned a three-count indictment charging Joseph Medeiros (Medeiros) with the commission of the crimes of murder, burglary, and conspiring with one Antonio Correia (Correia) to commit burglary. On July 1, 1986, a Superior Court jury, after a five-day trial, found Medeiros guilty of first-degree felony murder and conspiring to commit burglary. Consequently Medeiros is before us on appeal in which he alleges that the trial justice erred when he denied Medeiros's motion for a new trial and when he in-

structed the jury. The murder victim was an eighty-nine-year-old woman. Hereafter we shall refer to the victim as Helen. The facts of the case are as follows.

On August 15, 1985, Medeiros and Correia, a casual acquaintance with whom Medeiros had worked for a few weeks, made plans to go out for a night on the town. After making adequate preparations, Correia proceeded to Medeiros's residence in Fall River, Massachusetts, and arrived there between 4:30 and 5 p.m. Correia played the role of chauffeur as the two then drove to meet their dates. However, the enterprise came to an end when they discovered that the women had apparently made other arrangements and were nowhere to be found. Lacking any meaningful plan for the evening, Medeiros and Correia embarked on a course of action that would end in tragedy.

Whiling away time cruising the streets of Fall River in search of their dates, Medeiros and Correia bought and inhaled mescaline. They also purchased two six-packs of beer and smoked marijuana. When the search for female companionship proved fruitless, they obtained two additional six-packs and headed for Horseneck Beach. There, with the Atlantic Ocean as a backdrop, Medeiros and Correia talked, smoked more marijuana, and imbibed the contents of several containers of beer.

Despite having been paid that afternoon, Medeiros and Correia were apparently not satisfied with their earnings as they engaged in conversation regarding antique coins and housebreaks. Upon leaving Horseneck Beach, Medeiros and Correia drove toward the town of Tiverton, Rhode Island, and parked Correia's vehicle on the side of Old Stafford Road, which abuts Stafford Pond. Correia testified at trial that he used to swim in Stafford Pond and was familiar with this area.

At trial Correia testified that while parked by the side of the road, the two agreed that Correia would go through the woods, gain entry into Helen's home, and open the front door to afford Medeiros access to the residence. Correia maintained that Medeiros wished to remain with the vehicle for a few minutes before proceeding to Helen's residence so as to avoid appearing suspicious to a couple who were parked in a nearby car.

Correia stated that he entered the dwelling through an open window in the rear of the house and then provided access to Medeiros by unlocking the front door. Correia explained that upon entering the master bedroom, Helen threw a sheet over him and struck him a few times with a club. Correia said he wrestled the club away from Helen and hit her with it "a couple of times" until he realized she was a woman, at which time he attempted to retreat. Correia testified that Helen held him by the arm as he tried to leave and managed to strip him of a ring and a watch. Correia told the jury that Helen was still standing when he escaped her grip and that before leaving the area, he saw Medeiros come through the unlocked front door.

Correia also testified that while en route to his car, he disposed of the club with which he had struck Helen. He also told the jury that he waited in the car for some five to six minutes, after which elapsed time Medeiros returned. Correia claimed that on the return trip to Fall River, Medeiros threatened to kill him if he said "anything to anybody."

At trial a statement given by Medeiros to the Tiverton police was admitted into evidence. This document was consistent with Correia's testimony up until the time the two men arrived in the vicinity of Helen's home. Medeiros's statement confirms that he had discussed a house with antique coins in it, but when Correia asked him if he wanted "to do a house with him," Medeiros informed him that he "didn't want anything to do with it." Medeiros's statement indicates that he refused to take part in the break and that he simply remained in Correia's car to await the return of his companion. Medeiros insisted that Correia returned to the car approximately one-half hour after his departure and that as they sped back to Fall River, Correia informed him that he had struck a woman with a bat and hurt her.

On August 17, 1985, Sergeant Gilbert A. Pavao, Jr., of the Tiverton police department, was called to Helen's residence in Tiverton by neighbors who were concerned about her recent unexplained absence and uncollected newspapers at her dwelling. Sergeant Pavao entered the premises through an open window in the rear of the house. In the master bedroom he discovered Helen's partially nude body covered by a rug. Sergeant Mark Pelletier, the second officer to arrive on the scene, testified at trial that he discovered several open drawers and cabinets in Helen's residence. Sergeant Pelletier also stated that two telephone cords had been ripped from their receptacles and another had been unplugged. He also noted that blood was splattered on the television, a wall, and the ceiling in the master bedroom where Helen was found.

At trial Dr. Arthur C. Burns, chief medical examiner for the State of Rhode Island, testified that Helen suffered multiple lacerations of the scalp with underlying open fractures of the skull in addition to four fractured ribs on the right side. Doctor Burns concluded at trial that Helen's death was caused by her being struck with a blunt object in excess of a dozen times.

In Helen's home the detectives found a camouflage watch and a ring, which were later identified as belonging to Correia. Fingerprints taken at the scene were matched to Correia's prints by the Fall River police in September 1985, and a warrant was issued for his arrest. Subsequently Correia implicated Medeiros in the homicide of Helen and testified against him as state's witness at trial.

Medeiros raises several issues on appeal, the first being that the trial justice erred in denying his motion for a new trial. Medeiros contends that in deciding the motion for a new trial, the trial justice "did not independently assess the credibility of the state's chief witness, Antonio Correia." Medeiros claims that the court failed to take into account the improbability of Correia's testimony, noting that only Correia's fingerprints, watch, and ring were found in Helen's residence and that Correia was the one familiar with the area around Helen's home.

■ In addressing the first issue raised by Medeiros, we believe it appropriate to note that in *State v. Dame*, 560 A.2d 330, 332–33 (R.I.1989), this court stated that "a trial justice's ruling on a motion for a new trial is entitled to great weight and will be disturbed only when the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *See also State v. Henshaw*, 557 A.2d 1204, 1207 (R.I.1989).

When considering a motion for a new trial, the trial justice

"must make an independent appraisal of the testimony in the light of his charge to the jury, during which he may pick and choose whom and what he will believe * * *. [O]nce a trial justice has evaluated the testimony, he or she then determines whether the evidence adduced at the trial is such that the controversy as presented to the jury is one upon which reasonable minds could differ as to the conclusion the factfinders should reach or whether the evidence fails to prove guilt beyond a reasonable doubt. If the trial justice * * * finds that the dispute comes within the reasonable-minds-could-differ category, the new trial motion will be denied. On the other hand, if the trial justice believes the controversy to be one where the state has failed to sustain its burden of proof, a new trial will be ordered." *State v. Edwards*, 122 R.I. 228, 236, 405 A.2d 1161, 1165 (1979); *see also State v. Dame*, 560 A.2d 330 (R.I.1989); *State v. Henshaw*, 557 A.2d 1204 (R.I.1989).

■ Although the trial justice must weigh the credible evidence, this court has never held that he or she must expressly articulate his or her every thought on all the evidence presented. *See State v. DaRocha*, 121 R.I. 182, 185, 397 A.2d 500, 502 (1979). It is sufficient if this court can discern from the record that the trial justice applied those criteria set forth in *Edwards* in making a determination on a motion for a new trial.

A thorough review of the record indicates that the trial justice did, in fact, weigh all the relevant evidence in reaching the conclusion that reasonable minds could find Medeiros guilty of the crimes charged, relying on the evidence introduced at trial. In denying Medeiros's request for a new trial, the trial justice stated:

> "I find that the State has proved by evidence beyond a reasonable doubt that Antonio Correia and Joseph Medeiros agreed between themselves * * * to burglarize the home of [Helen]. * * * The evidence is clear that on that evening, once they had got together for their adventures, they did everything together, and in concert. * * * The Court rejects the defendant's suggestion that the stop was entirely Correia's own idea, as was the break."

The evidence presented at trial substantiates the trial justice's conclusions. Medeiros himself confessed to smoking marijuana, taking mescaline, purchasing four six-packs of beer, and initiating conversation regarding antique coins. It truly stretches the bounds of credibility to expect this court to believe that after all this illicit activity, Medeiros suddenly refused to participate in the break-in because of his moral principles. We subscribe to the sentiments expressed by the trial justice as follows:

> "The Court utterly rejects the defendant's suggestion that in the course of an evening replete with joint activity in concert, some of which was patently criminal, other than the activity with regard to [Helen's] home, that the defendant was suddenly afflicted with a seizure of morality and refused to take part in the break into [Helen's] home, and was just waiting in the car to complete his ride, to return to Fall River.
> "Logic, probability, common sense, human judgment, [point] unerringly in the opposite direction."

The second issue raised by Medeiros is that the trial justice erred when instructing the jury on the crime of aiding and abetting. In challenging the trial justice's charge, Medeiros cites only the last paragraph of such instruction as follows: "A person who aids and abets is not only guilty of the particular crime, that to his knowledge * * * his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly and intentionally aided or encouraged."

Medeiros maintains that "with no definition of the word 'confederate' the jury could easily have believed that the defendant was guilty of the crime he knew his friend was committing. Moreover, the jury could have believed that this defendant was then 'liable' for consequences such as the subsequent murder of [Helen]."

When reading the instructions of the trial justice in their entirety, we find Medeiros's argument without merit. This court emphasized in *State v. Baker*, 417 A.2d 906, 910 (R.I.1980): "To ascertain whether an instruction has fairly set forth for the jury the legal principles controlling a crucial factual issue, we must read the allegedly inadequate instructions in the context of the charge as a whole." *See also Cupp v. Naughton*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *State v. Gordon*, 508 A.2d 1339, 1349 (R.I.1986). The instructions given by the trial justice provide in pertinent part:

> "The defendant, in order to be convicted as an aider or abettor, must be proved to have shared in the criminal intent of the person who actually committed the criminal act. And there must have been a community of unlawful purpose at the time the act was committed. Put it another way. The accused must have been participating in the criminal purpose by which the actual perpetrator committed the offense. * * * Now, a person who aids and abets another to commit a crime is not only guilty of a particular crime, that to his knowledge his confederate contemplated to commit, but he is also responsible for the natural or reasonable or probable consequences of any act that he knowingly and intentionally aided or encouraged."

These instructions demonstrate that the trial justice accurately and fully delineated all

the components of the crime of aiding and abetting and therefore committed no error in giving such instructions.

■ The third issue raised by Medeiros on appeal is that the trial justice erred when he failed to instruct the jury as requested on being an accessory before the fact. At trial Medeiros requested that the court instruct the jury on the crime of being an accessory before the fact to burglary. The trial justice refused to give the charge, relying on the fact that being an accessory before the fact is not a lesser included offense of aiding and abetting. The trial justice also refused to give such a charge because Medeiros was indicted and tried as a principal and had no notice of being charged as an accessory before the fact.

The definition of an accessory before the fact is clear: "[A]n accessory before the fact is a person who aids, abets, procures, commands, counsels, or otherwise encourages another to commit a crime, but is not present when the crime is committed." 1 *Wharton's Criminal Law*, § 32 at 167 (Torcia 14th ed.1978). At no point in the trial did defense counsel propose that Medeiros be charged as an accessory before the fact as opposed to a principal. The crux of defense's argument was that Medeiros did not want anything to do with the break, was totally innocent of any wrongdoing, and was merely "in the wrong place at the wrong time."

■ After conducting the entire trial on the theory that Medeiros was innocent of any wrongdoing, the defense then requested that the jury be charged on the principles governing the determination of the crime of being an accessory before the fact. Case law demonstrates that a trial justice need only instruct a jury on issues raised at trial. In *State v. Medeiros*, 535 A.2d 766, 772 (R.I.1987), this court stated, "We have frequently stated that a trial justice need only instruct a jury regarding those rules of law that must be applied to the issues raised at the trial." *See also State v. Arpin*, 122 R.I. 643, 666, 410 A.2d 1340, 1352 (1980). At trial defense counsel failed to raise any issue remotely pertaining to being an accessory before the fact. In light of this point, an instruction on accessory before the fact, without support-

ing evidence produced at trial, would tend to mislead or confuse the jury. *See State v. Butler*, 107 R.I. 489, 491, 268 A.2d 433, 434 (1970). Therefore it is this court's conclusion that the trial justice correctly refused to instruct the jury on the crime of being an accessory before the fact.

■ The last issue raised by Medeiros on appeal is that the trial justice erred when he failed to instruct the jury as requested on issues of fact favorable to him. At trial Medeiros requested a charge that noted that "mere knowledge that the offense is to be committed or even mental approval is not enough," to be an accessory "one must do something beside giving approval or consent to the act." Although Medeiros requested that these charges be given to the jury verbatim, he neglected to object to the trial justice's failure to state the charges as such.

Rule 30 of the Superior Court Rules of Criminal Procedure provides in pertinent part, "No party may assign as error any portion of the charge *or omission therefrom* unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection." (Emphasis added.) In *State v. Williams*, 432 A.2d 667, 669 (R.I. 1981), this court noted, "We have repeatedly stated that we shall not consider on appeal asserted errors in the instructions of the trial justice unless timely objection is made in the trial court." *See State v. Marrapese*, 116 R.I. 1, 12, 351 A.2d 95, 100 (1976); *State v. Murphy*, 113 R.I. 565, 577, 323 A.2d 561, 567 (1974). Here defense counsel's failure to object to the trial justice's omission of requested charges precludes Medeiros from raising this issue on appeal.

For the reasons stated above, Medeiros's appeal is denied and dismissed and the judgment of the Superior Court is affirmed.